UNITED STATES  DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------x          23-CR-99(LJV-JJM)
UNITED STATES OF AMERICA,

vs.
                                      Buffalo, New York
HOWARD HINKLE, JR.,                   September 9, 2024
*also known as* Hard How,
               Defendant.
---------------------------x
**ORAL ARGUMENT**


                    TRANSCRIPT OF PROCEEDINGS
          BEFORE MAGISTRATE JUDGE JEREMIAH J. MCCARTHY
               UNITED STATES MAGISTRATE JUDGE



                    TRINI E. ROSS, ESQ.
                    United States Attorney
                    BY:  CAITLIN M. HIGGINS, AUSA
                    Federal Centre
                    138 Delaware Avenue
                    Buffalo, New York 14202

FOR DEFENDANT:      FRANK M. BOGULSKI, ESQ.
                    135 Delaware Avenue
                    Suite 2
                    Buffalo, New York 14202

FOR DEFENDANT:      VILLARINI & HENRY, LLP
                    BY:  DANIEL J. HENRY, JR., ESQ.
                    16 Main Street
                    Hamburg, New York 14075

ALSO PRESENT:       KHALID EMERSON, U.S. PROBATION OFFICER


TRANSCRIBER:        Diane S. Martens
                    dimartens55@gmail.com


 (Proceedings recorded by electronic video recording,
  transcript produced by computer.)

U.S. v. Hinkle, Jr. - 23-CR-99

1                    **P R O C E E D I N G S**

2                   *           *           *

3       (**Open court,** defendant present:)

4       **THE CLERK:**  We're on the record in criminal proceeding

5   23-CV-99, United States of America v. Howard Hinkle, Jr. for

6   oral argument of defendant's release motion.

7       Present in the courtroom are assistant U.S. Attorney

8   Caitlin Higgins.

9       Defendant Mr. Hinkle with attorneys Frank Bogulski and

10  Daniel Henry.

11      United States Probation Officer Khalid Emerson.

12      The Honorable Jeremiah J. McCarthy, presiding.

13      **THE COURT:**  All right.  Good morning, again everyone.

14      (All say good morning.)

15      **THE COURT:**  Defendant's renewed motion for release to

16  which the government has responded and opposing the motion.

17      Pretrial also opposes the motion.

18      So I'll hear from counsel.

19      **MR. BOGULSKI:**  Thank you, Judge.  I appreciate the

20  opportunity.

21      I'll take the pretrial memo first, Judge.  They do

22  oppose it but historically when this case began, it began

23  before Judge Roemer.  Judge Roemer had ordered my client's

24  release.  That detention order was appealed to Judge Sinatra

25  and it was denied.  But there was an original order.

U.S. v. Hinkle, Jr. - 23-CR-99

1     Subsequent to that, charges were filed, they were more
2  serious charges so that may factor into the equation,
3  candidly.  However, when my client was first brought into
4  custody and was arraigned before Judge Roemer, he had ordered
5  his release.  And that was appealed.  Also, and so there
6  was -- there is a recommendation at some point that my client
7  would be released.
8     In addition, when I look at the probation officer's
9  memorandum from Mr. Mamizuka, he says, quote, and this is in
10  the last paragraph:
11     "At this time I reviewed the defendant's motion for
12  release dated August 1st, 2024, said motion does suggest a
13  substantial change in circumstances that would warrant
14  immediate release from custody, in that there are delays in
15  this case that are not attributed to the defendant."
16     And you know, obviously, Judge, that is a big issue in
17  this case as far as delays and it's something that the Second
18  Circuit has addressed many times relative to our District.
19  This case is unique because there are delays that absolutely
20  have nothing to do, really, with Mr. Hinkle.
21     The government, this court had found, did not timely
22  disclose evidence and so years ago I had a case, Hector
23  Rodriguez Javiar Cordera (phonetic) before Judge Scott and my
24  client had been detained and I had found some evidence on my
25  own and I argued successfully before Judge Scott that release

U.S. v. Hinkle, Jr. - 23-CR-99

1  was warranted because now there's going to be motion practice

2  and further delays.

3       And I draw that case to this Court's attention because

4  once this whole issue with discovery is resolved and

5  protective orders, there's going to be extensive motion

6  practice and there's going to be delays and that has nothing

7  really to do with Mr. Hinkle.  It's not his fault as he's

8  sitting in jail.

9       So those are significant factors when we look at case

10 law as far as delays.  The other thing I wanted to point out

11 and this is a case I had before you years ago and I don't

12 remember if I put it succinctly or not in my motion.

13      **THE COURT:**  Mr. Bogulski, when you're talking about

14 cases you've had in the past, it would be helpful if they're

15 in your motion papers.

16      **MR. BOGULSKI:**  That's -- honestly, Judge, you are

17 correct.  And I told Mr. Henry this, that I, I didn't even

18 think about it.  To the extent that I, that I should have

19 or -- should have put it in my papers but I'll, you know, if

20 need be, if the Court would grant me --

21      **THE COURT:**  Well, I want to turn -- I'm aware of the

22 delay situation.  I think everybody's aware of the delay

23 situation.

24      The other factor that you mention in your motion is that

25 he now apparently or his common law wife is willing to post

5

U.S. v. Hinkle, Jr. - 23-CR-99

1   the family residence.

2       **MR. BOGULSKI:**   Yes, Judge, that's what I was about to

3   get to.   There was a Malik Matthews (phonetic) that you

4   released, that was the Matthews case.   And you found in that

5   case my client, his family, was willing to post their home up

6   for bail purposes and that rebutted the presumption of

7   flight -- and perhaps dangerousness, I don't remember.   But

8   it was something that my client did.   He post -- the family,

9   I believe it was his mother that posted a home.

10      In this case, yes, my client's common law wife is here,

11  his son is here, his mother-in-law, sister-in-law but his

12  wife is willing to post the family home.   I've been in

13  contact with Robert Fogg -- that's the attorney -- and he, he

14  has represented that to me, Judge.

15      So that is a significant change in circumstances because

16  my client's not going to flee the jurisdiction.   He would be

17  under strict conditions.   He would be at home.   We would

18  consent to any electronic monitoring because he just wants to

19  be home with his family.   So, yes, that is something that his

20  family would do.

21      He also has employment opportunities and that's,

22  obviously, going to depend upon what Court -- what kind of

23  conditions but he can start immediately at D & D Contracting

24  working on cement or working concrete jobs.   My client's done

25  construction work his entire life.

U.S. v. Hinkle, Jr. - 23-CR-99

1    So our thought is that with the, you know, with property

2 being posted -- and that's significant.  I mean, his family's

3 sitting right here behind him, standing behind him,

4 supporting him in this endeavor and if he violates or he

5 takes off, then he's going to -- his family home is gone.

6    So that, to me, is very significant because there are

7 times I have clients their family won't put the money up.

8 They're like you know what?  We've been through this with

9 this defendant and we don't trust that and they're not going

10 to put up a dollar.  But to put up the family home is huge.

11 I mean, that is about as strong of an argument -- besides the

12 delays -- I believe that we have in this case because they're

13 putting their money -- not their money, their home up.

14    And my understanding is there's no liens on that

15 property and that his wife would put that or common law wife

16 would put that property up and that's through Mr. Fogg that

17 I've had those conversations, Judge.

18    **THE COURT:**  All right.  Thank you.

19    Ms. Higgins.

20    **MS. HIGGINS:**  Judge, yes.

21    First as to the pretrial delay, Mr. Bogulski in the -- I

22 know he withdrew the motion from I think it was July 26th or

23 July 24th -- had cited a Second Circuit case *Orena*,

24 O-R-E-N-A, for the proposition that the Second Circuit has

25 considered pretrial delay in the context of detention

U.S. v. Hinkle, Jr. - 23-CR-99

1    hearings.  In fact, *Orena* states quite the opposite.  And if

2    you'll indulge me, I can quote from the beginning of it.

3        We do not agree that the postponement of trial dates

4    constitutes a new circumstance justifying release under the

5    Bail Reform Act.  Even if defense counsel had sought an early

6    trial date -- which they explicitly did not -- there is no

7    statutory bases for the conclusion that the length of a

8    pretrial detention warrants the granting of bail where there

9    has been a finding of danger to the community.  To the

10   contrary, Congress rejected any specific time limit under the

11   Bail Reform Act for detention pending trial, relying,

12   instead, upon the Speedy Trial Act.

13       And, Judge, that's *Orena*, 986 F.2d 628 (2d Circuit

14   1993).

15       That is -- we're conflating two different constructs

16   here, Judge:  Detention, which asks, as your Honor knows,

17   whether defendant constitutes a danger to the community or a

18   risk of flight and speedy trial, which is an entirely

19   different analysis at this point.  So if your Honor is

20   including any of the delay in its decision as to whether to

21   continue to detain the defendant, or to release him, I

22   believe that that -- this is significant, in that the Second

23   Circuit has said it's not appropriate.

24       As to the common law wife now putting the home up, I, I,

25   you know, I didn't handle the initial detention hearings but

U.S. v. Hinkle, Jr. - 23-CR-99

1    I wondered why at this point on August 1st, 2024, she was

2    willing to do so and not before.  And I would also say that,

3    to my understanding, the defendant resided with this common

4    law wife during the commission of the charged crimes which

5    raises red flags for the government.

6         I understand and I've appeared before your Honor where

7    your Honor has released defendants on home arrest or

8    different situations but I think this would also be a

9    situation that would require a responsible person who will

10   say, yes, I, I am going to insure that this defendant

11   complies with the conditions of release.  And I understand

12   they're putting up their home but I would say that that does

13   not constitute a new circumstance or a changed circumstance

14   for purposes of the detention analysis.

15        As Mr. Bogulski has said, this, this detention order

16   from Judge Roemer was appealed twice and it was reversed and

17   then the Second Circuit affirmed it.  This defendant still

18   remains -- regardless of the pretrial delay, regardless of

19   whether he can be released to a home where he had previously

20   engaged in criminal conduct -- this defendant remains a

21   danger to the community.

22        **THE COURT:**  Okay.  Any response to that?

23        **MR. BOGULSKI:**  Yes, Judge.

24        As far as the house goes relative to the original

25   detention order, my client's wife was charged at that time.

U.S. v. Hinkle, Jr. - 23-CR-99

1   So, it really wasn't on the table.  She was charged along

2   with him.  I believe it was 924(c) or marijuana, something or

3   other and I believe those, she's -- I mean, she's not charged

4   in this case so that isn't really relevant for the

5   consideration here because my client's family's willing to

6   put up their family home.

7        His son is here who manages a couple NAPA Auto Parts

8   stores and he could be a signatory, as well, as far as if

9   that's something that would alleviate maybe the government's

10  concerns.  He does have a good job, as I said, he managed --

11  in speaking to my client, my understanding that his son,

12  Gage, manages a NAPA store and is now going to be adding

13  another store so he would be a responsible surety if the

14  Court were to craft conditions beyond just the home, we have

15  his wife, his son that are willing to support him.

16       And keep in mind, probation acknowledges, as well, that

17  there is a substantial change in circumstances.  And I think

18  that my client's been in jail for 10, 11, almost 11 months, I

19  believe.  So, we don't know how long that's going to go but

20  certainly putting up the house is going to rebut any

21  presumption of dangerousness and flight.

22       And we'd ask that you set reasonable, least restrictive

23  conditions in this case, Judge.

24       **THE COURT:**  Okay.  Mr. Emerson, anything you wish to

25  add?

U.S. v. Hinkle, Jr. - 23-CR-99

1    **PROBATION OFFICER EMERSON:**  Yes, your Honor.

2       So, as it relates to the memo sent by Officer Mamizuka,

3    I believe it's just simply citing what was already stated in

4    the motion as it relates to the delays.  However, it

5    continues.  If you keep reading, he states that these are not

6    circumstances that which our office would consider when

7    making our recommendation.

8       And, also, too, I just want to speak to, to when someone

9    puts a home up -- he referred to the case of Mr. Matthews who

10   I coincidentally supervised and the home was put up and that

11   was a defendant that continued to violate conditions and his

12   bail was ultimately revoked.

13      So I don't think that just someone putting a home up

14   would guarantee that the defendant will follow the conditions

15   of release, and I think that's what we're addressing in our

16   memo.  It doesn't change the circumstances that the defendant

17   is more likely to abide by the conditions of release just

18   because the home is put up.  Because if the defendant's bail

19   is revoked, it's not guaranteed that the house is going to be

20   lost.  We've had defendants who have violated conditions,

21   ultimately bail has been revoked and the signatory keeps the

22   residence.  So I don't think that deters anyone from

23   violating conditions as it relates to conditions of release.

24      **THE COURT:**  What are you suggesting, that's meaningless

25   someone --

U.S. v. Hinkle, Jr. - 23-CR-99

1     **PROBATION OFFICER EMERSON:**  No, I'm not suggesting it's

2    meaningless.  I'm just saying that I don't think it serves as

3    a change of circumstance for someone to now abide by

4    conditions of release when it was deemed that they weren't

5    appropriate for release in the past.  Definitely not

6    meaningless, your Honor.

7     **MR. BOGULSKI:**  Judge --

8     **THE COURT:**  Yeah.

9     **MR. BOGULSKI:**  My client's a trustee in the jail.

10     **THE COURT:**  I know.  I've considered that before.

11     **MR. BOGULSKI:**  He's a vastly different position in his

12    life.  I mean, I brought it up.  Mr. Matthews is far younger.

13    There's a lot of data to suggest that there's a lower rate of

14    recidivism -- I'm not saying that -- you know, recidivism or

15    criminal activity, the older you get.  My client's just about

16    50 years old.  I don't have it in front of me.  I don't think

17    he has any bench warrants or failures to appear on his

18    record.  He's always been cooperative with Mr. Henry and I.

19    And the fact that the jail thinks enough of him and that his

20    family is here to support him and because he can get a job

21    tomorrow if he's released, I think the home is very important

22    and his family support and his son's willingness to act as a

23    signatory is something this Court should consider, as well.

24     **MS. HIGGINS:**  Judge, if I might just respond, if you

25    would allow me.  Two points.  Recidivism is an

U.S. v. Hinkle, Jr. - 23-CR-99

1    inappropriate -- is not an appropriate consideration for

2    detention purposes.  I think that's --

3        **THE COURT:**  No, it relates to whether he's going to do

4    bad things in the future, doesn't it?

5        **MS. HIGGINS:**  Well, that would be with respect to if

6    Mr. Bogulski had produced a case saying that recidivism is an

7    appropriate consideration for the detention purposes.  It's

8    considered with respect to sentencing but not with respect to

9    recidivism because he still remains a danger to the

10   community.

11       With respect to the house, your Honor -- and maybe we

12   can inquire further about his wife's pending charges:  If

13   they are pending, if they're not.  The government would have

14   concerns releasing the defendant to a situation where the

15   wife has also engaged in criminal conduct, Judge.  We just

16   don't know enough.  And I, quite frankly, cannot address

17   anything about the cases that Mr. Bogulski is citing today

18   for the reason that your Honor raised earlier, in that I

19   didn't have any forewarning of it.

20       **THE COURT:**  Yeah, I'm not considering those at this

21   point.

22       **MS. HIGGINS:**  Understood, Judge, thank you.

23       **THE COURT:**  What is the situation with the wife's

24   criminal status?

25       **MR. BOGULSKI:**  Judge, my understanding she's not charged

U.S. v. Hinkle, Jr. - 23-CR-99

1    at all.  Like, she was initially charged but there are no

2    pending charges.

3        **THE COURT:**  Okay.  Well, all right.  And I will stay my

4    order but I am going to direct that Mr. Hinkle be released on

5    the following conditions:

6        First of all, that the family home be posted.

7        Secondly, that his son -- and this is new because it's

8    coming from me so it's up to his son.  I would ask that his

9    son sign a $50,000 signature bond, meaning that he doesn't

10   have to post anything right now but -- and I will explain to

11   him in a moment what the consequences would be if his father

12   violates conditions of release -- coupled with other

13   conditions that I'm going to ask Mr. Emerson to suggest and

14   then, as I said, I will stay the release order, we'll discuss

15   that down the road.

16       Mr. Emerson.

17       **PROBATION OFFICER EMERSON:**  Yes, your Honor.

18       Report to pretrial services within 24 hours of release.

19       Not obtain a passport or any international travel

20   document.  Travel is restricted to the Western District of

21   New York.

22       Remain at a verifiable address as approved by Pretrial

23   Services.

24       Avoid all contact with codefendants and defendants in

25   related cases.

U.S. v. Hinkle, Jr. - 23-CR-99

1        Avoid all contact directly or indirectly with persons

2   who may become a victim or potential witness in the case or

3   investigation.

4        Refrain from possessing a firearm.

5        Refrain from any use of alcohol.

6        Refrain from the use or unlawful possession of a

7   narcotic drug.  Defendant may not possess marijuana,

8   regardless if it's legal under state law.

9        Submit to drug testing and treatment, if deemed

10  necessary.

11       Refrain from obstructing or attempting to obstruct or

12  tamper with the drug testing or electronic monitoring.

13       We will be recommending home incarceration via radio

14  frequency and report law enforcement contact within 72 hours.

15       If you give me one second, I just want to look at the

16  bail report.  So in the original bail report it did state

17  that he was under the care of a counselor and a psychologist

18  in Wellsville.  So we would ask that there -- a mental health

19  evaluation be completed, as well.

20       **THE COURT:**  Okay.

21       **MS. HIGGINS:**  Judge, if I can just put one more thing on

22  the record.  One of the agents is here and just let me know

23  that the defendant actually admitted to law enforcement that

24  he grew about 12 pounds of marijuana at his house.  He

25  admitted to smoking half of that and selling half of that so

U.S. v. Hinkle, Jr. - 23-CR-99

1    we're also releasing him to a home where he directly engaged

2    in criminal conduct.  It may not change your Honor's decision

3    but I needed to put it on the record.

4        THE COURT:  Okay.  Thank you.

5        Any objection to those conditions?  And initially the

6    initial condition of release would be home incarceration.  I

7    understand he wants to work.  We'll take that one step at a

8    time see how things go.  I may allow him to work down the

9    road.

10       MR. BOGULSKI:  Okay.  That's exactly what I was going to

11   say, Judge, is if maybe the Court would entertain a condition

12   with a curfew that would allow him to work, that's all.

13       THE COURT:  All right.  Any other objections to those

14   conditions?

15       MR. BOGULSKI:  No, Judge.

16       PROBATION OFFICER EMERSON:  And I would just ask if the

17   Court would allow us to complete a home inspection before --

18       THE COURT:  Oh, absolutely.  Absolutely, yeah.

19       PROBATION OFFICER EMERSON:  Okay.

20       THE COURT:  Can I have the common law wife and his son

21   come up, please.  Right up to the podium, please.

22       Good morning.

23       MS. ANDERSON:  Good morning.

24       THE COURT:  What is your name, ma'am?

25       MS. ANDERSON:  Dillon Anderson.

U.S. v. Hinkle, Jr. - 23-CR-99

1      **THE COURT:**  And you are the defendant's common law wife,

2   is that correct?

3      **MS. ANDERSON:**  Yes.

4      **THE COURT:**  And prior to his incarceration, was he

5   residing with you at your home?

6      **MS. ANDERSON:**  Yes.

7      **THE COURT:**  Was anyone else residing there?

8      **MS. ANDERSON:**  No.

9      **THE COURT:**  Do you own the home?

10      **MS. ANDERSON:**  Yes.

11      **THE COURT:**  Anybody else co-owner?

12      **MS. ANDERSON:**  No.

13      **THE COURT:**  And are there any liens on that property?

14      **MS. ANDERSON:**  No.

15      **THE COURT:**  And I know it's been mentioned that at one

16   point you were subject to criminal charges.

17      Are there any charges currently pending against you?

18      **MS. ANDERSON:**  No.

19      **THE COURT:**  All right.  You understand, ma'am, that --

20   well, do you have a ballpark idea of the value of the home?

21      **MS. ANDERSON:**  Probably 120.

22      **THE COURT:**  Okay.  You understand that if you post that

23   as security for the defendant's release and if he violates

24   the conditions of release, you may lose that home; do you

25   understand that?

U.S. v. Hinkle, Jr. - 23-CR-99

1        **MS. ANDERSON:**  Yes.

2        **THE COURT:**  That's a serious consideration.  Are you

3    willing to do that?

4        **MS. ANDERSON:**  Yes.

5        **THE COURT:**  All right.  And so what's your name, please?

6        **MR. GAGE ANDERSON-HINKLE:**  Gage Hinkle.

7        **THE COURT:**  And you are the defendant's son?

8        **MR. GAGE ANDERSON-HINKLE:**  Correct.

9        **THE COURT:**  And it's my understanding you are employed?

10    That's what Mr. Bogulski said.

11        **MR. GAGE ANDERSON-HINKLE:**  Yes.

12        **THE COURT:**  And where do you work?

13        **MR. GAGE ANDERSON-HINKLE:**  NAPA Auto Parts.

14        **THE COURT:**  Approximately how much do you earn per

15    month?

16        **MR. GAGE ANDERSON-HINKLE:**  3,000.

17        **THE COURT:**  Okay.  Now, one of the additional conditions

18    that I've mentioned is that I would ask you, in addition to

19    the family home being posted, I would ask you to sign a

20    signature bond in the amount of $50,000.

21        What that means for you is that you don't need to put

22    anything up right now.  But that if your father violates the

23    conditions of his release, you may be liable for that amount;

24    do you understand that, sir?

25        **MR. GAGE ANDERSON-HINKLE:**  Yes.

U.S. v. Hinkle, Jr. - 23-CR-99

1       **THE COURT:**  That's a significant consideration.  Are you

2   willing to undertake that risk?

3       **MR. GAGE ANDERSON-HINKLE:**  Yes.

4       **THE COURT:**  Can you both assure me that you will, if you

5   become aware that Mr. Hinkle has violated any of the

6   conditions of his release, that you will notify pretrial

7   services and notify the Court?

8       **MR. GAGE ANDERSON-HINKLE:**  Yes.

9       **THE COURT:**  All right.  Thank you.  You can have a seat.

10   We'll have some paperwork for you.

11       As I said, I will stay the release order for a couple

12   reasons.

13       First of all, Mr. Bogulski, it's going to be up to you

14   to coordinate getting the government information about this

15   property that they can verify what the value is and what

16   the -- whether there are any liens against it.  I'm setting

17   the bail amount on that house.  It's been represented to me

18   that it's a hundred, about 120 in value.  So I'll set the

19   equity amount at 90,000, plus the son's execution of the

20   signature bond.  It will be conditioned on there being an

21   inspection of the premises so that it's compatible for

22   release.  And it's going to have to be -- is there a landline

23   because he's going to have to be monitored?

24       **MS. ANDERSON:**  Going to have to get one.

25       **THE COURT:**  You're going to have to get one, if you

U.S. v. Hinkle, Jr. - 23-CR-99

1    don't have one.

2        **MS. ANDERSON:**  (Indiscernible.)

3        **THE COURT:**  Can you get one.  You'll have to get one,

4    all right.

5        So, for now, I'm going to stay -- it seems to me this is

6    going to take a while to get the documentation about the

7    house nailed down.  So today is September 9th, I'll stay his

8    release until 5:00 p.m. on September 20th.  If the conditions

9    relative to the house have been satisfied and there is no

10   other stay, I will -- his release will be effective at that

11   time.

12       I'm aware, Ms. Higgins of what you said about what he's

13   done in the past.  Nonetheless, I think that the two forms of

14   security that I've requested are sufficient to reasonably

15   assure me that, if released, he will not pose a risk of

16   flight or danger to the community.  He knows what it's like

17   to be in custody.  I'm sure he doesn't want to go back there.

18       Mr. Hinkle.

19       **THE DEFENDANT:**  Yes, sir.

20       **THE COURT:**  You've heard the conditions of your release?

21       **THE DEFENDANT:**  I did.

22       **THE COURT:**  And you understand, sir, that one of those

23   conditions -- or two of those conditions are that your common

24   law wife is going to post your home?

25       **THE DEFENDANT:**  Yes, sir.

U.S. v. Hinkle, Jr. - 23-CR-99

1    **THE COURT:**  Her home in which you've resided as security

2    for your release and your son is going to execute a $50,000

3    signature bond.  If you violate any of the conditions if

4    you're released, not only will your release be revoked but

5    you will be putting both of them at significant jeopardy; do

6    you understand that, sir?

7        **THE DEFENDANT:**  Yes, sir.

8        **THE COURT:**  Can you assure me that that will not occur?

9        **THE DEFENDANT:**  I can assure you that it won't occur.

10       **THE COURT:**  All right.  Now one issue is whether you use

11   it, whether you sell it or whatever, it's all banned as far

12   as federal law is concerned.  I know that under state law use

13   of marijuana is not criminalized.  It still is under federal

14   law.

15       So, one of the conditions of your release is that you

16   not violate federal, state or local law.  So you can't use

17   marijuana.

18       **THE DEFENDANT:**  Yes, sir.

19       **THE COURT:**  Obviously you can't sell it.

20       **THE DEFENDANT:**  Yes, sir.

21       **THE COURT:**  Any of that would be a violation of your

22   conditions of release.

23       **MS. HIGGINS:**  Judge, just a question.  Would the

24   presence of the drug on the premises of the home be a

25   violation of conditions?  I don't know if that's going to be

U.S. v. Hinkle, Jr. - 23-CR-99

1   imposed, a condition that he not be around drugs.

2       **THE COURT:**  Yeah, I'm going to insist that there be no

3   marijuana or any other illicit substances in the premises.

4       **MS. HIGGINS:**  So in the premises but around the house.

5   I don't know where he's growing -- or he grew the marijuana

6   but if it's still there.

7       **THE COURT:**  Okay.  Anywhere in the property that is

8   adjacent to the house, he can't sell, he can't use.

9       You understand that, sir?

10      **THE DEFENDANT:**  Yes, sir.

11      **MS. HIGGINS:**  I'm sorry.  I'm not trying to belabor it,

12  but if it's there, Judge, it violates the condition.  The

13  presence of drugs in the --

14      **THE COURT:**  Well, it's not.

15      **THE DEFENDANT:**  It's not there.

16      **THE COURT:**  They do the inspection.  If --

17      **MS. HIGGINS:**  Okay.

18      **THE COURT:**  -- they find marijuana, it's got to be

19  removed.

20      **MS. HIGGINS:**  That's fine, Judge, thank you.

21      **THE COURT:**  Everybody good with that?

22      **THE DEFENDANT:**  Yes.

23      **MR. BOGULSKI:**  Yes.

24      **THE COURT:**  Or if they find any other illicit substance.

25      **MS. HIGGINS:**  Of course.

U.S. v. Hinkle, Jr. - 23-CR-99

1      THE COURT:  Firearms, anything of that sort, it's all
2   got to go.
3      MS. HIGGINS:  And, Judge, we're going to be appealing
4   just to put on the record, as well, so.
5      THE COURT:  I am not surprised.
6      MS. HIGGINS:  Thank you.
7      THE COURT:  But, again, you have a stay until --
8      MS. HIGGINS:  Yep, thank you.
9      THE COURT:  -- the 20th.
10     MS. HIGGINS:  Got it.
11     THE COURT:  And if it turns out that by the 20th, the
12  other conditions, for instance, the information relative to
13  the title of the home or liens or whatever hasn't been worked
14  out, then the stay of release will continue beyond --
15     MS. HIGGINS:  Okay.
16     THE COURT:  -- that date.
17     MS. HIGGINS:  Understood.  Thank you, Judge.
18     THE COURT:  All right.  Anything further today?
19     MR. BOGULSKI:  No, Judge.
20     THE COURT:  Thank you all.
21     (WHEREUPON, proceedings adjourned.)
22
23
24
25

U.S. v. Hinkle, Jr. - 23-CR-99

1

2                    *             *             *

3                **CERTIFICATE OF TRANSCRIBER**

4

5          In accordance with 28, U.S.C., 753(b), I

6   certify that this is a true and correct record of proceedings

7   from the official audio recording of the

8   proceedings held in the United States District Court

9   for the Western District of New York before

10  Magistrate Judge Jeremiah J. McCarthy on September 9, 2024.

11

12

13  S/ Diane S. Martens

14  Diane S. Martens
    Transcriber
15

16

17

18

19

20

21

22

23

24

25