IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.                                                    23-CR-99-EAW
                                                          **SEALED AND EX PARTE**

SIMON GOGOLACK, et al.,

            Defendants.
_____

### MOTION FOR A STAY OF THE MAGISTRATE COURT'S ORDER DISLCOSING GRAND JURY MINUTES

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Casey L. Chalbeck, Assistant United States Attorney, of counsel, hereby submits the following motion for a stay of the Magistrate Court's order (ECF No. 643) directing the disclosure of grand jury minutes.

#### I.    BACKGROUND

##### A.    The Defendants' Arguments before the Magistrate Court

In their pretrial motions, Messrs. Gerace, Ermin, and Hinkle sought disclosure of grand jury minutes so that they can advance a motion to dismiss for prosecutorial misconduct. *See* Gerace, Ermin, Hinkle Omnibus Non-Disp. Pre-Tr. Mots., at 63–81, ECF No. 410, (dated Apr. 16, 2025) (hereinafter "Gerace Mot."). The defendants advanced two sets of arguments. First, they claimed that the Second Superseding Indictment ("the Indictment") includes "demonstratively false allegations." *Id.* at 68 (capitalization and underlined omitted). Specifically, the defendants argued that one of the Indictment's alleged Overt Acts—Overt Act ¶ 25—is "clearly false and utterly absurd." *Id.* at 69.

Overt Act ¶ 25 alleges as follows:

> The trial witness list filed or caused to be filed by Gerace Attorney 1 also listed Crystal Quinn as a defense witness. The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a Protective Order which prohibited attorneys for Gerace from revealing to Gerace the government's witnesses' names and from providing Gerace with the government's witness list.

Sec. Super. Indict., at 16 ¶ 25, ECF No. 25, (filed Jan. 5, 2024).

In the defendants' view, this allegation equates to an assertion that "Mr. Gerace learned through inappropriate means that Ms. Quinn was a witness." Gerace Mot., at 68. As they put it, "[t]he government wanted to advance a theory that Mr. Gerace became aware that Ms. Quinn was a potential government witness by inappropriate and secretive means . . . ." *Id.* at 69. "In reality," they explain, "the government had publicly revealed Ms. Quinn to be a cooperating witness during a detention hearing in March 2023 before witness lists were filed in case no. 19-CR-227." *Id.* at 70. In sum, the defendants' argument that any suggestion that Mr. Gerace initially "learned of Ms. Quinn's designation as a government witness" through her "inclu[sion] on the defense witness list . . . is blatantly false, and the government knows it." *Id.* at 71. On this basis, the defendants argue that the government "engineered" the "grand jury presentation . . . to present an obviously false narrative," which "certainly supports disclosure of grand jury minutes in support of a potential motion to dismiss." *Id.* at 73. At no point, either in their initial papers or their reply brief, did the defendants argue that the government improperly instructed the grand jury with respect to Overt Act ¶ 25 (or any other allegation related to Count 1).

Second, the defendants argue that the government committed prosecutorial misconduct by judge shopping through case-related forms. *See id.* 74–80. Based on the defendants' narrative of prosecutorial judge-shopping, the defendants seek the "disclosure of

2

grand jury minutes" so that "the defense can accurately review what information the government had solicited at the grand jury prior to the indictment of Mr. Gogolack when it declined to file a" case-related form, relating the case to the prosecution of Messrs. Gerace and Bongiovanni in case numbers 19-CR-227 and 23-CR-37. *Id.* at 81. For the purposes of this motion, the government devotes less attention to this argument because counsel for Mr. Gerace did not focus on it in his oral argument before the Magistrate Court, and the Magistrate Court did not appear to consider it when ordering the government to disclose grand jury transcripts.

### B. The Government's Response in Opposition

As it relates to the defendants' motion, the government's response proceeded in two parts. First, the government argued that "the defendants are not entitled to challenge a grand jury proceeding—or the contents of an indictment—because they disagree with the facts asserted." Gov. Omnibus Resp. in Opp., at 50, ECF No. 423, (dated Apr. 30, 2025). Indeed, "[t]o hold otherwise would invite every defendant in every case to access grand jury materials on the basis that the defendant disagreed with the Grand Jury's findings." *Id.* at 50–51. As such, the government maintained that the defendants failed to demonstrate a "particularized need," which the standard requires. *See id.* at 51.

Second, and insofar the defendants sought disclosure to determine whether the government engaged in judge shopping, the government responded that Rule 6(e) "authorizes disclosure where 'a ground may exist to dismiss the indictment because of a matter that occurred *before* the grand jury,' not as a baseless fishing expedition in search of prosecutorial misconduct *outside* the grand jury." *Id.* at 55 (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)) (second emphasis added).

3

### C. The Oral Argument, the Indictment, and the Magistrate Court's Ruling

During the oral argument, the government argued that the defendants misconstrued Overt Act ¶ 25 and the Indictment, which contains allegations undermining the defendants' incorrect narrative regarding the government's grand jury presentation. Contrary to the defendants' urgings, Overt Act ¶ 25 does not allege that Mr. Gerace first learned that Ms. Quinn was a government witness by Gerace Attorney 1 putting her name on the defense witness list. In fact, it does not even allege that an attorney violated the Protective Order. Rather, Overt Act ¶ 25 alleges that placing Ms. Quinn's name on the defense's witness list "circumvented" the Protective Order's provision that prohibited counsel from revealing to Mr. Gerace "the government's witnesses' names" and "from providing [Mr. Gerace] with the government's witness list." Sec. Super. Indict., at 16 ¶ 25.

Consistent with Mr. Gerace's theory that he could have learned Ms. Quinn was cooperating based on the government's detention proffer, the Indictment makes several references regarding detention proceedings in 19-CR-227 and 23-CR-37. For example, the Indictment's Introduction alleges as follows:

> 16. On March 24, 2023, **GERACE** appeared before a United States District Judge for an arraignment on Indictment 23-CR-37. Following detention hearing proceedings on March 24 and March 27, 2023, **GERACE** was ordered detained pending trial.

Sec. Super. Indict., at 5 ¶ 16.

This means that the Grand Jury was presented with evidence regarding the detention proceedings held on March 24 and March 27, 2023. Elsewhere, the Indictment contains allegations that are consistent with Mr. Gerace's theory that he did not learn of Ms. Quinn's

4

cooperation with the government through Gerace Attorney 1's placement of her on the witness list. For example, the very first overt act alleged in Count 1—Overt Act ¶ 17—states:

<u>Overt Acts</u>

17. On or about February 16, 2023, knowing and having reason to know that Crystal Quinn was represented in the matter by another attorney, Gerace Attorney 1 caused an unwitting attorney, Attorney 2, to: (i) communicate with Crystal Quinn without the consent of Crystal Quinn's attorney; (ii) offer to represent Crystal Quinn in the matter in which Crystal Quinn already had an attorney; and (iii) offer to represent Crystal Quinn because Gerace Attorney 1, was "concerned that the feds might be trying to intimidate [Crystal Quinn] or even just bring [Crystal Quinn] in for questioning." Gerace Attorney 1 caused Attorney 2 to make a communication to Crystal Quinn as follows:

> Omg I'm sorry to hear that hunny 🙂
> Where are you living now? Are you ok otherwise?
> I know ▮▮▮ well, great guy and great attorney. I'm guessing he's meeting you for the same concern I had as I got a call from Peter Gerace's attorney, ▮▮▮▮▮▮ concerned that the feds might be trying to intimidate you or even just bring you in for questioning. He saw that I was your attorney in the past and reached out to me for me to make sure you were OK and knew I'm here if you need representation.
> And I want you to know I'm here even if you just need a friend as well 🙂

Sec. Super. Indict., at 14 ¶ 17. In other words, the evidence supports the inference that by February 16, 2023, Gerace Attorney 1 either (1) suspected or believed Ms. Quinn could—but

5

had not yet—began cooperating with the federal government or (2) suspected or believed Ms. Quinn already began cooperating with the government.

The very next allegation—Overt Act ¶18—supports the inference that by early March 2023, Gerace knew that Ms. Quinn was cooperating with the federal government. Specifically, Overt Act ¶18 alleges:

> 18. On or about March 13, 2023, individuals unknown to the Grand Jury placed dead rats on Crystal Quinn's mother's vehicle and in the vicinity of Crystal Quinn's residence in Depew, New York.

*Id.* at 15 ¶ 18.

Stated otherwise, to make this finding, the Grand Jury must have received evidence supporting the inference that Mr. Gerace or someone associated with Mr. Gerace believed that Ms. Quinn was cooperating with the government even prior to the detention hearing held on March 27th. After all, why else would dead rats be placed on her mother's vehicle in the vicinity of her residence on or about March 13, 2023, *before* the date of Mr. Gerace's detention hearing?

As the government stated at oral argument, the Indictment's other allegations also make plain that the defendants' assertions of government misconduct are meritless. It is obvious based upon a plain reading of the Indictment that evidence relevant as to when Mr. Gerace inferred or concluded that Ms. Quinn was cooperating was presented to the Grand Jury, and does not support the defendants' core claim that the facts set forth in Overt Act ¶25 are *how* Mr. Gerace learned of Ms. Quinn's cooperation. To the contrary, the Indictment demonstrates that the grand jury heard evidence that Mr. Gerace focused on the potential that Ms. Quinn was a government witness as early as February 16, 2023, and that Ms. Quinn

6

may have inadvertently been confirmed as a government witness through the March 27th detention hearing.

Nevertheless, the Magistrate Court focused on another issue altogether, one neither briefed by the parties nor raised by the defendants. Specifically, in making his ruling, the Magistrate Court ordered disclosure on the basis of "how" the grand jury "was . . . instructed so that they could make th[e] finding" alleged in Overt Act ¶ 25. Non-Disp. Mots. Oral Arg. Tran., at 103, (dated May 21, 2025).

Additionally, the Magistrate Court concluded that because Rule 6(e)(3)(E) grants it discretion to release grand jury minutes, it could do so without regard to the "particularized need" standard required by the Second Circuit. In particular, the Magistrate Court stated:

> Criminal Rule 6(e)(3)(E) states that the Court *may* authorize disclosure at a time and a manner and subject to any other conditions that it directs of a Grand Jury matter, sub (2), at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury. *I emphasize the word* "may" *here*. I'm not drawing any conclusions as to whether there was any impropriety. I don't know. But focusing again only on -- and I've read the other allegations, the factual allegations but I still have trouble with how the Grand Jury was able to -- I'm not addressing this in terms of whether there's evidence to support it, I'm addressing it in terms of how was the jury instructed so that they could make this finding. So I am going to direct that the Grand Jury minutes be given to me for my *in-camera* review.
>
> Mr. Foti, I know you've asked that you have access to it, too. Not at this point because I think I have enough to make my own determination as to whether or not further disclosure is appropriate. I may conclude that I don't think there was any impropriety. I would indicate that to Judge Vilardo, if I conclude that there may have been. We'll see where we go from there. But for now that's my ruling.

*Id.* at 102–03.

    **D.    The government's appeal, the District Court's denial, and the Magistrate Court's clarification order.**

On June 4, 2025, the government filed its appeal of the Magistrate Court's disclosure order with the district court. *See* Mem. Br., ECF No. 443, (dated June 4, 2025). On July 31, 2025, this Court denied the government's appeal of the Magistrate Court's order directing the *in camera* inspection of Grand Jury transcripts. *See* Dec. & Order, ECF No. 522, (dated July 31, 2025). The government then moved for clarification before the Magistrate Court regarding the scope of its disclosure order, noting that the Magistrate Court's initial disclosure order related to a review of the Grand Jury instructions. *See* Ltr. Mot. Clarification, at 1–2, ECF No. 526, (dated July 31, 2025) (citing Non-Disp. Mots. Oral Arg. Tran., at 102–03, (dated May 21, 2025)).

The Magistrate Court then issued an order clarifying that, "in order to determine whether any impropriety may have occurred relative to [Overt Act] ¶25, I will need to review *in camera* the entire grand jury proceedings, including any statements made to the grand jurors by the government attorneys." Clarification Order, at 3–4, ECF No. 544, (dated Aug. 8, 2025). Subsequently, the government provided the Magistrate Court with the entire Grand Jury record.

    **E.    The Magistrate Court's Order to Show Cause**

After conducting its review, the Magistrate Court ordered the government to show cause "why an unredacted version of this Order to Show Cause, together with the grand jury materials discussed herein, should not be provided to defendants and publicly disclosed." *See* Show Cause Order, ECF No. 605, (dated Sept. 15, 2025). The Magistrate Court premised its theory of disclosure not on "whether any impropriety may have occurred relative to [Overt Act] ¶ 25," Clarification Order, at 3, but, rather, whether the government failed to properly

8

instruct the Grand Jury when █████████████████████████████. *See* Show Cause Order, at 4 ("Therefore, even if it does not provide the grand jury with detailed legal instructions, the government should at a minimum read to them the statutes upon which the charges are based.").

This purported error, the Magistrate Court concluded, could not "have been harmless," as the Grand Jury could not have found "probable cause without knowing the elements of the offenses named in the Second Superseding Indictment." *Id.* at 5. In that regard, even though it failed to cite any specific provision of Rule 6(e) authorizing the dissemination of Grand Jury minutes, the Magistrate Court anchored its theory of disclosure upon a theory of why the Indictment should be dismissed. *See id.*; *see* Fed. R. Crim. P. 6(e)(3)(E)(ii) (authorizing disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury").

### F. The Government's Response to the Order to Show Cause

Because the Magistrate Court premised its initial disclosure order on Rule 6(e)(3)(E)(ii), *see* Non-Disp. Oral Arg. Tran., at 102–03, the government's response to the Show Cause Order focused, principally, on (1) the unavailability of dismissal for the kind of purported instructional error identified by the Magistrate Court and (2) the propriety of the government's instructions to the Grand Jury. *See* Gov. Resp. Order to Show Cause, (dated Sept. 29, 2025).

### G. The Magistrate Court's Second Disclosure Order

The Magistrate Court issued its second and final disclosure order on October 16, 2025. *See* Dec. & Order, ECF No. 643, (dated Oct. 16, 2025) (the "Second Disclosure Order"). In it, the Magistrate Court claimed that "[t]he [g]overnment [m]isconstrue[d] the [b]asis for the

[o]rder to [s]how [c]ause" when it argued that "there [was] no basis to disclose the instructions provided to the Grand Jury under Rule 6(e)(3)(E)(ii)." *Id.* at 1 (bold, capitalization, and alteration omitted). That is so, the Magistrate Court reasoned for the first time, because it was actually ordering the material "preliminary to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). The Magistrate Court then proceeded to explain why disclosure was necessary for the defendants to seek dismissal of the indictment.

The Second Disclosure Order justifies dismissal, and, by extension, disclosure, through two core claims. First, the Magistrate Court targets various facial deficiencies concerning the indictment. Specifically, the Magistrate Court reasoned that the "Second Superseding Indictment is replete with misstatements or incomplete descriptions of the statutes upon which its charges are based." *Id.* In particular, it notes that Count 4, which charges Mr. Gogolack with distribution of fentanyl resulting in a death, cites to, but does not include, the penalty language in § 841(b)(1)(C); Counts 9 and 10, which charge Mr. Gogolack with firearm offenses, do not "cite the text of § 924(a)(8)," a penalty provision regarding certain gun crimes, "or otherwise describe its provisions"; and Counts 19 through 21 do "not cite the text of [18 U.S.C.] § 2," the aiding and abetting statute, even though they charge Mr. Hinkle with § 2 liability. *Id.* at 5–6. Though the point of these attacks for the purposes of justifying the disclosure of Grand Jury minutes is unclear, they seem to be, at minimum, in service of the idea that the government was somehow required to instruct the Grand Jury on the penalties associated with each charge.

Additionally, the Magistrate Court claims that the Indictment improperly used the word "was" when charging Messrs, Gogolack, Ermin, and Roncone with being unlawful

10

users in possession of firearms because § 922(g)(3) only criminalizes the possession of firearms for present-day users of narcotics. *See id.* at 6–7 (referring to Counts 10, 24, and 25).

Second, the Magistrate Court contends that the government was beholden to provide instructions beyond reading the statute because another AUSA who assisted in the impaneling of the Grand Jury in August 2023 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Magistrate Court concluded that the government "misled the grand jury, intentionally or otherwise." Show Cause Order at 5. In particular, though it claimed in the Show Cause Order that the government need only read the statutes upon which the charges are based, Show Cause Order at 4, in its Second Disclosure Order, the Magistrate Court faulted the government for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Lastly, the Magistrate Court claimed that the length of the Grand Jury's deliberations "raise[d] concern as to whether it acted on its own judgment, independently of the prosecutor . . . ." For all of these reasons, the Magistrate Court expressed its "grave doubts" that the Grand Jury "acted independently of the government in returning the Second Superseding Indictment" and ordered disclosure so that the defendants could seek "[d]ismissal of [the] indictment." *Id.* at 9.

The Magistrate Court then explained that it would order, "absent a stay by Judge Wolford," that certain Grand Jury minutes and other aspects of this litigation be publicly docketed on October 24, 2025, at 12:00 p.m.

11

## II.  LEGAL FRAMEWORK

### A.  Stays of a Magistrate Court's Order

"We begin with the basic proposition that all orders and judgments of courts must be complied with promptly.  If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, *absent a stay*, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975) (emphasis added).  In the appellate context, four factors are relevant in considering whether to issue a stay of an order pending appeal:  "(1) whether the stay applicant has made a strong showing that he [or she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Grote*, 961 F.3d 105, 122–23 (2d Cir. 2020) (*citing In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (internal quotation marks and footnote omitted)).

But it is unclear if those four factors apply where, as here, a party to a criminal case seeks a stay from the district court of the magistrate court's decision.[1]  In this district, motions for stays in criminal cases are routinely made, considered, and granted without the moving party addressing the traditional four appellate factors—including often by the Magistrate Court to whom this case has been referred.  *See, e.g.*, Aff. in Support of Mot. for Stay, *United States v. Thomas*, 21-MJ-564, ECF No. 8, (dated May 4, 2021) (affirmation by defense counsel seeking a stay but not addressing the four factors); Aff. in Support of Mot. for Extension & Stay, *United States v. Nagi*, 15-CR-148, ECF No. 39, (dated June 28, 2016) (affirmation by

---

[1]  Previously, the Magistrate Court criticized the government for not addressing the four appellate factors governing stay requests.  *See* Order, ECF No. 256, (dated Oct. 9, 2024).

government seeking an extension and a stay without addressing the four factors); Mem. in Support of Mot. for Stay, *United States v. Kelley*, 10-CR-266, ECF No. 19, (dated Sept. 30, 2010) (successfully moving for a stay without addressing the four factors); Mot. for Stay, *United States v. White*, 22-MR-154, ECF No. 19, (dated May 23, 2023) (affirmation by defense counsel seeking a stay without addressing the four factors); *see also* Minute Entry, *United States v. MacCallum*, 15-CR-204, (dated Apr. 28, 2016) (stay of release order granted by Magistrate Judge McCarthy without reference to or requiring adherence to the four stay factors).

Consistent with this practice, other district courts within the Second Circuit have reviewed motions for stays under more flexible criteria than the four appellate factors the Magistrate Court has embraced in this litigation. *See, e.g.*, *Shaw v. Hornblower Cruises & Events, LCC*, No. 21 CIV. 10408 (VM), 2023 WL 2330368, at *4 (S.D.N.Y. Mar. 2, 2023) (in a case regarding a stay of a discovery order, noting, in relevant part, that a stay "may be entered upon a moving party's showing of 'good cause'" (quoting *In re Application of Sukhbaatar Batbold for an Order Pursuant to 28 U.S.C. § 1782*, No. 21 MC 218, 2023 WL 2088524, at *9 (S.D.N.Y. Feb. 17, 2023))); *United States v. $278,780.80 in Funds*, No. 11 CIV. 00555 KBF, 2012 WL 4747209, at *2 (S.D.N.Y. Oct. 4, 2012) (referencing a "necessary or appropriate" standard in connection with the government's motion for a stay of a magistrate court's order); *Sheehy v. Wehlage*, 1:02-CV-592A, 2007 WL 836811, at *1, (W.D.N.Y. Mar. 15, 2007) (granting stay of Magistrate Court's sanctions order without reference to the four traditional appellate factors).

This practice makes sense. Unlike the Federal Rule of Appellate Procedure 8 or Federal Rule of Civil Procedure 62, both of which outline how, and under what circumstances, a party may seek a stay pending appeal, the Federal Rules of Criminal

13

Procedure lack a general vehicle through which parties may seek or obtain stays. *Cf.* FED. R. CRIM. P. 38 (regarding stays of sentencings or other disabilities). Given the dearth of direction offered by the Federal Rules, it appears that district courts apply a common-sense, flexible approach to granting stays within their own jurisdictions. That said, all parties agree that it is the burden of the party seeking the stay to show that circumstances—whatever they may be—justify the exercise of the court's discretion in this regard. *Nken v. Holder*, 556 U.S. 418, 421 (2009).

### III.    ARGUMENT

Under either the flexible, "good cause" standard, *see Shaw*, 2023 WL 2330368, at *4, or the more stringent four-factor test, the Court should enter a stay of the Magistrate Court's Second Disclosure Order. Regarding the first factor, the government has a strong chance of prevailing on its appeal because the Second Disclosure Order is contrary to law and clearly erroneous. An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *In re Eli Lilly & Co.*, 580 F. Supp. 3d 334, 337 (E.D. Va. 2022) (internal quotations omitted). The Magistrate Court's order is contrary to law because none of the five rationales it offers legally justify disclosing Grand Jury minutes.[2]

Turning first to the Magistrate Court's claim that the government committed some kind of instructional error in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the government is not required to read an offense's penalty provisions to the Grand Jury. In fact, Department of Justice guidance instructs attorneys to delete the penalty provisions of any statute that they choose to supply to the Grand Jury. DEP'T OF JUSTICE, FEDERAL GRAND JURY PRACTICE

---

[2] The government also reserves its right to argue that the Second Disclosure Order makes clearly erroneous factual findings. *See infra,* n. 5.

14:23, 642 (Office of Legal Education, Oct. 2008) (copy on file with author); *accord* BENCHBOOK FOR FEDERAL DISTRICT JUDGES § 7.04, 249 ¶ 10 (6th ed. 2013) ("Furthermore, when deciding whether or not to indict, you should not consider punishment in the event of conviction.").

This practice makes sense. Penalty provisions often do not contain elements of an offense, making their reading unnecessary for a Grand Jury to determine probable cause.[3] At the same time, an indictment's reference to a penalty provision may assist the defendant in ascertaining the maximum and minimum penalties to which he is subject, and may thus further the indictment's function as a notice pleading. So, the government's decision not to inform the Grand Jury of the penalties accompanying the charges was as proper as its decision to include citations to the penalty provisions in the offenses, themselves. That is, notwithstanding the Magistrate Court's unsupported conclusion to the contrary, the government did not commit prosecutorial misconduct in failing to apprise the Grand Jury of the offenses' penalties and the indictment is not facially defective due to the inclusion of the statutes' myriad penalty provisions.

---

[3] Other times, penalty provisions contain elements of the offense. Case in point: Count 4, which the Magistrate Court claims is defective because it cites to § 841(b)(1)(C), a penalty provision whose language the Magistrate Court incorrectly contends Count 4 did not "describe" and that "c[ould] [not] have been violated". Second Disclosure Order at 5. Contrary to the Magistrate Court's characterization, Count 4 alleges that Mr. Gogolack distributed fentanyl, and that "the death of Crystal Quinn [] resulted from the use of such substance[]." Sec. Super. Indict., at 34. That language mirrors § 841(b)(1)(C), which provides for an enhanced penalty where "death or serious bodily injury results from the use of such substance." Because Count 4's death-resulting allegation is a "fact that increases the penalty" for the distribution offense beyond its otherwise twenty-year maximum term of imprisonment, it is an "element" of the offense. *United States v. Richards*, 302 F.3d 58, 66 (2d Cir. 2002) (discussing *Apprendi*).

Moreover, Rule 6(e)(3)(E)(ii) contemplates disclosure where the basis to dismiss an indictment relates to "a matter that occurred before the grand jury." But the Magistrate Court's order largely attacks the Indictment for what it perceives as facial "misstatements or incomplete descriptions of the statutes upon which its charges are based," Second Disclosure Order at 5, not for conduct that "occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii). Grand Jury minutes are irrelevant to—and unnecessary for—a defendant's motion challenging an indictment's facial sufficiency under Rule 12(b)(3). Thus, disclosing Grand Jury minutes on this basis would be improper under Rule 6(e)(3)(E)(ii).

Nor is the government required to provide the kind of detailed instructions that the Magistrate Court faults it for ▬▬▬▬ in Counts 5, 23, and 26, which charge various defendants with making false statements to federal law enforcement. Though the Magistrate Court acknowledged as much in its Show Cause Order, its Second Disclosure Order claims that a federal prosecutor committed error in not providing the Grand Jury with caselaw defining § 1001's "materiality" element. *Compare* Show Cause Order at 4 ("[E]ven if it does not provide the grand jury with detailed legal instructions, the government should at a minimum read to them the statutes upon which the charges are based." (citing, in relevant part, *United States v. Smith*, 105 F. Supp. 3d 255, 262–63 (W.D.N.Y. 2015) (concluding that "a prosecutor's reading the relevant statute would be sufficient") and *United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) ("Courts generally have found that the prosecutor satisfactorily explains the offense to be charged by simply reading the statute to the grand jury.")), *with* Second Disclosure Order at 7 (faulting the government for not providing a definition of materiality, which is defined by the courts, not the statute). This claim seems to dovetail with the Magistrate Court's conclusion ▬▬▬▬

███████████████████████████████. Putting aside that the AUSAs in this case did not know of the impanelment AUSA's comments, ████████████████████ Rather, the impanelment AUSA—████████████████████████—█

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████

That Magistrate Court's reliance on the length of the Grand Jury's deliberations as evidence of its lack of independence is also contrary to law. The law does not permit the federal judiciary to second guess a Grand Jury's probable cause findings based on the length or nature of the Grand Jury's deliberations. *See generally United States v. Williams*, 504 U.S. 36 (1992); *Costello v. United States*, 350 U.S. 359 (1956). Not only is such second-guessing completely arbitrary, impractical, and unlawful, it is particularly inappropriate where, as here, the Grand Jury reviewed evidence—████████████████████████████████ ████████████—over the course of ████████ and every Magistrate Court in the Buffalo Division of the Western District of New York issued search warrants based on *less* evidence.

Lastly, nowhere in the Second Disclosure Order does that Magistrate Court answer the fundamental question posed by Rule 6(e)(3)(E)(ii): is there a basis to dismiss the indictment that may justify disclosure? Over the course of two opinions, the Magistrate Court has failed to cite a single case in which an indictment was dismissed based on comparable facts, not least of all a case after *Williams* admonished that dismissal is appropriate only where a prosecutor's misconduct amounts to a violation of one of those 'few, clear rules which were

17

carefully drafted and approved by th[e] [Supreme] Court and by Congress to ensure the integrity of the grand jury's functions." *Williams*, 504 U.S. at 46 (quoting *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in judgment)). For that reason alone, the Second Disclosure Order fails as a matter of law.

Moving to the next factor, there will be irreparable injury if a stay is denied. The Grand Jury's integrity and institutional independence relies on its continued secrecy, and it is the position of the U.S. Attorney's Office that it cannot be the practice in this district that a Magistrate Court is permitted to erode that institutional independence in a manner contrary to controlling Supreme Court precedent. Moreover, were the Magistrate Court's order go into effect, it would invite every defendant charged with 21 U.S.C. § 841 offenses and certain firearm offenses, like 18 U.S.C. § 922(g)(3), to pierce the veil of Grand Jury secrecy to seek instructions and, evidently, information regarding the length of the Grand Jury's deliberations in baseless efforts to dismiss indictments.

Third, the balance of hardships and the public interest weigh in favor of this Court granting a stay. Disclosing grand jury materials is a significant breach of the presumption of regularity. *United States v. R. Enters., Inc.*, 498 U.S. 292, 300–01 (1991) ("We begin by reiterating that the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority."); *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in judgment) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process."); *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023) ("As a general rule, the grand jury process is afforded a presumption of regularity." (internal quotations omitted)). To do so under these circumstances is unprecedented.

Accordingly, at this stage of the proceeding, the interests of justice weigh in favor of granting a stay.

Finally, to the extent that there is concern that the delay resulting from the stay and the appeal would prejudice the defendants' ability to file a dispositive motion based on the grand jury minutes, it is entirely speculative. There remains no basis for the defendants to file a dispositive motion based on the instructional issue raised by the Magistrate Court and, in any event, the defendants could be granted leave to file any such motion at the Court's discretion.

### IV. CONCLUSION

WHEREFORE, the government respectfully requests that the Court grant its motion for a stay of the Magistrate Court's October 16, 2025, Order requiring the disclosure of grand jury minutes.

DATED: Buffalo, New York, October 16, 2025.

                MICHAEL DIGIACOMO
                United States Attorney

BY:   s/ CASEY L. CHALBECK
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       (716) 843-5881
       Casey.Chalbeck@usdoj.gov