IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

          v.                                23-CR-99-EAW

SIMON GOGOLACK, et al.,

            Defendants.

───────────────────────────────

## GOVERNMENT'S OBJECTIONS TO THE MAGISTRATE COURT'S ORDERS DISCLOSING GRAND JURY MATERIAL

Michael DiGiacomo
United States Attorney


BY:   s/ CASEY L. CHALBECK
        s/ NICHOLAS T. COOPER
        s/ JOSHUA A. VIOLANTI
        s/ JOSEPH M. TRIPI
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        (716) 843-5881
        Casey.Chalbeck@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

I.   BACKGROUND................................................................................................. 1

   A.   Defendant Gerace, Ermin, and Hinkle's Motion for the Disclosure of Grand Jury Minutes ............................................................................................... 1

   B.   The Government's Response in Opposition ............................................... 3

   C.   The Oral Argument, the Indictment, and the Magistrate Court's Ruling .................. 4

   D.   The Government's Appeal, the District Court's denial, and the Magistrate Court's Clarification Order. ...................................................................... 8

   E.   Defendant Knight's Motion for the Disclosure of Grand Jury Minutes and the Magistrate Court's Order Denying Disclosure ......................................... 9

   F.   The Magistrate Court's Order to Show Cause Regarding Defendants Gerace, Ermin, and Hinkle's Motion for Disclosure ............................................. 10

   G.   The Government's Response to the Order to Show Cause .......................... 11

   H.   The Magistrate Court's Second Disclosure Order .................................... 11

   I.   The Magistrate Court's Reversal of its Prior Order Denying the Disclosure of Grand Jury Materials to Defendant Knight ........................................... 13

II.  STANDARD OF REVIEW .............................................................................. 14

III. LEGAL FRAMEWORKS ............................................................................... 14

   A.   Disclosures of Grand Jury Material Pursuant to Rule 6(e)(3)(E)(i) ........... 14

   B.   Disclosures of Grand Jury Material Pursuant to Rule 6(e)(3)(E)(ii) and Dismissals of Indictments due to Grand Jury Misconduct ............................. 16

   C.   Grand Jury Instructions .......................................................................... 19

IV.  THE MAGISTRATE COURT'S DISCLOSURE ORDERS ARE CLEARLY ERRONEOUS AND CONTRARY TO LAW ....................................................... 20

   A.   The Magistrate Court wrongly relied on Rule 6(e)(3)(E)(i), which cannot authorize the disclosure of grand jury material where the material is only relevant to a motion to dismiss the indictment. ..................................... 21

   B.   Rule 6(e)(3)(E)(ii) cannot authorize the disclosure of grand jury material because there is no basis upon which the indictment may be dismissed. ............................. 23

      1.   The government did not violate one of the "few, clear rules" that could authorize the dismissal of the indictment. ............................................... 24

      2.   Dismissal is unavailable where, as here, the government ███████████████
         ████████████████████████████████████████████████████

C.   The Magistrate Court clearly erred when it concluded that the ███████████
███████████████████████████████████████████████████████████████

D.   The Magistrate Court's repeated violation of the party-presentation principle confirms
that it abused its discretion.......................................................................................... 41

CONCLUSION................................................................................................................ 42

INTRODUCTION

Rule 6(e)(3)(E)(ii) authorizes the disclosure of grand jury material "at the request of the defendant who shows that a ground may exist to dismiss the indictment." FED. R. CRIM. P. 6(e)(3)(E)(ii).  On its face, that rule tasks (1) the defendant with (2) demonstrating a basis to dismiss the indictment prior to granting the court the discretion to authorize the disclosure of grand jury material.  *See id.*  Even then, the defendant must make that showing in a particularized fashion.  Here, the Magistrate Court has refused to acknowledge these basic limitations on its power, let alone adhered to them.  In ordering the disclosure of grand jury material, the Magistrate Court has embraced theories of disclosure never pressed by the defendants, adopted legal rationales that fail to articulate any basis upon which the indictment may be dismissed, and identified "facts" of purported prosecutorial misconduct that do not exist.  *See* Dec. & Order, Dkt. 643, (dated Oct. 16, 2025); Dec. & Order, Dkt. 647, (dated Oct. 22, 2025).  Because the Magistrate Court's disclosure orders are premised upon clearly erroneous factual findings and are otherwise contrary to law, the United States objects and asks this Court to (1) vacate the Magistrate Court's finding that the government misled the grand jury, as well as any express or implied finding of prosecutorial misconduct and (2) set aside its disclosure orders.

I.    BACKGROUND

A.    Defendant Gerace, Ermin, and Hinkle's Motion for the Disclosure of Grand Jury Minutes

In their pretrial motions, Messrs. Gerace, Ermin, and Hinkle sought disclosure of grand jury minutes so that they can advance a motion to dismiss for prosecutorial misconduct. *See* Gerace, Ermin, Hinkle Omnibus Non-Disp. Pre-Tr. Mots., at 63–81, Dkt. 410, (dated Apr. 16, 2025).  The defendants advanced two sets of arguments.  First, they claimed that the

Second Superseding Indictment ("the Indictment") includes "demonstratively false allegations." *Id.* at 68 (capitalization and underlined omitted). Specifically, the defendants argued that one of the Indictment's alleged Overt Acts—Overt Act ¶ 25—is "clearly false and utterly absurd." *Id.* at 69.

Overt Act ¶ 25 alleges as follows:

> The trial witness list filed or caused to be filed by Gerace Attorney 1 also listed Crystal Quinn as a defense witness. The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a Protective Order which prohibited attorneys for Gerace from revealing to Gerace the government's witnesses' names and from providing Gerace with the government's witness list.

Sec. Super. Indict., at 16 ¶ 25, Dkt. 24, (filed Jan. 5, 2024).

In the defendants' view, this allegation equates to an assertion that "Mr. Gerace learned through inappropriate means that Ms. Quinn was a witness." Dkt. 410 at 68. As they put it, "[t]he government wanted to advance a theory that Mr. Gerace became aware that Ms. Quinn was a potential government witness by inappropriate and secretive means . . . ." *Id.* at 69. "In reality," they explain, "the government had publicly revealed Ms. Quinn to be a cooperating witness during a detention hearing in March 2023 before witness lists were filed in case no. 19-CR-227." *Id.* at 70. In sum, the defendants' argument that any suggestion that Mr. Gerace initially "learned of Ms. Quinn's designation as a government witness" through her "inclu[sion] on the defense witness list . . . is blatantly false, and the government knows it." *Id.* at 71. On this basis, the defendants argue that the government "engineered" the "grand jury presentation . . . to present an obviously false narrative," which "certainly supports disclosure of grand jury minutes in support of a potential motion to dismiss." *Id.* at 73. At no point, either in their initial papers or their reply brief, did the defendants argue that

the government improperly instructed the grand jury with respect to Overt Act ¶ 25 (or any other allegation related to Count 1).

Second, the defendants argued that the government committed prosecutorial misconduct by judge shopping through case-related forms. *See id.* 74–80. Based on the defendants' narrative of prosecutorial judge-shopping, the defendants seek the "disclosure of grand jury minutes" so that "the defense can accurately review what information the government had solicited at the grand jury prior to the indictment of Mr. Gogolack when it declined to file a" case-related form, relating the case to the prosecution of Messrs. Gerace and Bongiovanni in case numbers 19-CR-227 and 23-CR-37. *Id.* at 81. For the purposes of this motion, the government devotes less attention to this argument because counsel for Mr. Gerace did not focus on it in his oral argument before the Magistrate Court, and the Magistrate Court did not appear to consider it when ordering the government to disclose grand jury transcripts.

### B.     The Government's Response in Opposition

The government's response proceeded in two parts. First, the government argued that "the defendants are not entitled to challenge a grand jury proceeding—or the contents of an indictment—because they disagree with the facts asserted." Gov. Omnibus Resp. in Opp., at 50, Dkt. 423, (dated Apr. 30, 2025). Indeed, "[t]o hold otherwise would invite every defendant in every case to access grand jury materials on the basis that the defendant disagreed with the Grand Jury's findings." *Id.* at 50–51. As such, the government maintained that the defendants failed to demonstrate a "particularized need" for disclosure, as required by the standard. *See id.* at 51.

Second, and insofar as the defendants sought disclosure to determine whether the government engaged in judge shopping, the government responded that Rule 6(e) "authorizes disclosure where 'a ground may exist to dismiss the indictment because of a matter that occurred *before* the grand jury,' not as a baseless fishing expedition in search of prosecutorial misconduct *outside* the grand jury." *Id.* at 55 (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)) (second emphasis added).

### C.    The Oral Argument, the Indictment, and the Magistrate Court's Ruling

During the oral argument, the government also emphasized that the defendants misconstrued Overt Act ¶ 25 and the Indictment, which contains allegations undermining the defendants' incorrect narrative regarding the government's grand jury presentation. Contrary to the defendants' urgings, Overt Act ¶ 25 does not allege that Mr. Gerace first learned that Ms. Quinn was a government witness by Gerace Attorney 1 putting her name on the defense witness list. In fact, it does not even allege that an attorney violated the Protective Order. Rather, Overt Act ¶ 25 alleges that placing Ms. Quinn's name on the defense's witness list "circumvented" the Protective Order's provision that prohibited counsel from revealing to Mr. Gerace "the government's witnesses' names" and "from providing [Mr. Gerace] with the government's witness list." Dkt. 24 at 16 ¶ 25.

Consistent with Mr. Gerace's theory that he could have learned Ms. Quinn was cooperating based on the government's detention proffer, the Indictment makes several references regarding detention proceedings in 19-CR-227 and 23-CR-37. For example, the Indictment's Introduction alleges as follows:

4

> 16.    On March 24, 2023, **GERACE** appeared before a United States District Judge for an arraignment on Indictment 23-CR-37. Following detention hearing proceedings on March 24 and March 27, 2023, **GERACE** was ordered detained pending trial.

*Id.* at 5 ¶ 16.

It necessarily follows that the grand jury was presented with evidence regarding the detention proceedings held on March 24 and March 27, 2023. Elsewhere, the Indictment contains allegations that are consistent with Mr. Gerace's theory that he did not learn of Ms. Quinn's cooperation with the government through Gerace Attorney 1's placement of her on the witness list. For example, the very first overt act alleged in Count 1—Overt Act ¶ 17—states:

**Overt Acts**

17.    On or about February 16, 2023, knowing and having reason to know that Crystal Quinn was represented in the matter by another attorney, Gerace Attorney 1 caused an unwitting attorney, Attorney 2, to: (i) communicate with Crystal Quinn without the consent of Crystal Quinn's attorney; (ii) offer to represent Crystal Quinn in the matter in which Crystal Quinn already had an attorney; and (iii) offer to represent Crystal Quinn because Gerace Attorney 1, was "concerned that the feds might be trying to intimidate [Crystal Quinn] or even just bring [Crystal Quinn] in for questioning." Gerace Attorney 1 caused Attorney 2 to make a communication to Crystal Quinn as follows:

> Omg I'm sorry to hear that hunny 😔
> Where are you living now?
> Are you ok otherwise?
> I know ▮▮▮ well, great guy and great attorney. I'm guessing he's meeting you for the same concern I had as I got a call from Peter Gerace's attorney, ▮▮▮ concerned that the feds might be trying to intimidate you or even just bring you in for questioning. He saw that I was your attorney in the past and reached out to me for me to make sure you were OK and knew I'm here if you need representation.
> And I want you to know I'm here even if you just need a friend as well 😊

*Id.* at 14 ¶ 17. In other words, the evidence supported the inference that by February 16, 2023, Gerace Attorney 1 either (1) suspected or believed Ms. Quinn could—but had not yet—begun cooperating with the federal government or (2) suspected or believed Ms. Quinn already began cooperating with the government.

The very next allegation—Overt Act ¶18—supports the inference that by early March 2023, Mr. Gerace knew that Ms. Quinn was cooperating with the federal government. Specifically, Overt Act ¶18 alleges:

> 18.     On or about March 13, 2023, individuals unknown to the Grand Jury placed dead rats on Crystal Quinn's mother's vehicle and in the vicinity of Crystal Quinn's residence in Depew, New York.

*Id.* at 15 ¶ 18.

To make this finding, consistent with the presumption of regularity, the grand jury must have received evidence supporting the inference that Mr. Gerace or someone associated with Mr. Gerace believed that Ms. Quinn was cooperating with the government even prior to the detention hearing held on March 27th.

As the government stated at oral argument, the Indictment's other allegations further undermine the defendants' assertions of government misconduct.  It is obvious based upon a plain reading of the Indictment that evidence relevant to when Mr. Gerace inferred or concluded that Ms. Quinn was cooperating was presented to the Grand Jury, and does not support the defendants' core claim that the facts set forth in Overt Act ¶25 are *how* Mr. Gerace learned of Ms. Quinn's cooperation.  To the contrary, the Indictment demonstrates that the grand jury heard evidence that Mr. Gerace focused on the potential that Ms. Quinn was a government witness as early as February 16, 2023, and that Ms. Quinn may have indirectly been confirmed as a government witness through the March 27th detention hearing.

Nevertheless, the Magistrate Court focused on another issue altogether, one neither briefed by the parties nor raised by the defendants.  Specifically, in making its ruling, which is reproduced in its entirety below, the Magistrate Court ordered that the government produce

grand jury material for an *in camera* inspection based on "how" the grand jury "was . . . instructed so that they could make th[e] finding" alleged in Overt Act ¶ 25.  Non-Disp. Mots. Oral Arg. Tran., at 103, (dated May 21, 2025).

> Criminal Rule 6(e)(3)(E) states that the Court *may* authorize disclosure at a time and a manner and subject to any other conditions that it directs of a Grand Jury matter, sub (2), at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury.  *I emphasize the word* "may" *here*. I'm not drawing any conclusions as to whether there was any impropriety. I don't know. But focusing again only on -- and I've read the other allegations, the factual allegations but I still have trouble with how the Grand Jury was able to -- I'm not addressing this in terms of whether there's evidence to support it, I'm addressing it in terms of how was the jury instructed so that they could make this finding.  So I am going to direct that the Grand Jury minutes be given to me for my *in-camera* review.
>
> Mr. Foti, I know you've asked that you have access to it, too.  Not at this point because I think I have enough to make my own determination as to whether or not further disclosure is appropriate.  I may conclude that I don't think there was any impropriety.  I would indicate that to Judge Vilardo, if I conclude that there may have been.  We'll see where we go from there.  But for now that's my ruling.

*Id.* at 102–03.

As the Magistrate Court made clear, its first disclosure order was anchored in Rule 6(e)(3)(E)(ii)'s authority.  *See id.*

### D.    The Government's Appeal, the District Court's denial, and the Magistrate Court's Clarification Order.

On June 4, 2025, the government appealed the Magistrate Court's disclosure order to the District Court.  *See* Mem. Br., Dkt. 443, (dated June 4, 2025).  On July 31, 2025, this Court denied the government's appeal.  *See* Dec. & Order, Dkt. 522, (dated July 31, 2025). The government then moved for clarification before the Magistrate Court regarding the scope of its disclosure order, noting that the Magistrate Court's initial disclosure order related to a

review of the grand jury instructions.  *See* Ltr. Mot. Clarification, at 1–2, Dkt. 526, (dated July 31, 2025) (citing Non-Disp. Mots. Oral Arg. Tran., at 102–03, (dated May 21, 2025)).

The Magistrate Court then issued an order clarifying that, "in order to determine whether *any* impropriety may have occurred relative to [Overt Act] ¶25, I will need to review *in camera* the entire grand jury proceedings, including any statements made to the grand jurors by the government attorneys."  Clarification Order, at 3–4, Dkt. 544, (dated Aug. 8, 2025) (emphasis added).  Subsequently, the government provided the Magistrate Court with the entire grand jury record.

### E.    Defendant Knight's Motion for the Disclosure of Grand Jury Minutes and the Magistrate Court's Order Denying Disclosure

Defendant Frank Knight also moved for the disclosure of grand jury minutes, arguing, in relevant part, that the indictment falsely alleged that Mr. Knight made a false statement when he told the FBI that co-defendant Hinkle did not attend a poker game held on July 27, 2023.  Def. Knight Pre-Tr Mots., at 11–12, Dkt. 455, (dated June 13, 2025).  According to Mr. Knight, "[t]he only unequivocal statement that [he] made to the FBI was that [Mr.] Hinkle was at the card game," which, in his view, supported the inference that the "grand jury received intentionally misleading information."  *Id.* at 12.

Though the government argued that Rule 6(e) required more than Mr. Knight's "speculation" concerning the grand jury presentation, and that he was not entitled to challenge a grand jury proceeding based on his "disagree[ment] with the facts asserted," Gov. Resp. in Opp. Knight Pre-Tr. Mots., at 4, Dkt. 468, (dated June 30, 2025), the Magistrate Court ordered that it would conduct an *in camera* inspection to determine if the grand jury had been misled.

9

On August 27, 2025, and after ostensibly reviewing the entirety of the grand jury presentation, the Magistrate Court concluded that "the grand jury was not misled by the government, and could reasonably have found probable cause to believe that [Mr.] Knight's initial statement to [the FBI] that he did not believe that [Mr.] Hinkle was at the July 27[th] poker game was intentionally false and 'material' to the investigation . . . ."  Dec. & Order, at 4, Dkt. 585, (dated Aug. 27, 2025).

### F.    The Magistrate Court's Order to Show Cause Regarding Defendants Gerace, Ermin, and Hinkle's Motion for Disclosure

After conducting its review, the Magistrate Court ordered the government to show cause "why an unredacted version of this Order to Show Cause, together with the grand jury materials discussed herein, should not be provided to defendants and publicly disclosed."  *See* Show Cause Order, Dkt. 605, (dated Sept. 15, 2025).  The Magistrate Court premised its theory of disclosure not on "whether any impropriety may have occurred relative to [Overt Act] ¶ 25," Dkt. 544 at 3, but, rather, whether the government failed to properly instruct the Grand Jury when it did not ███████████████████.  *See* Dkt. 605 at 4 ("Therefore, even if it does not provide the grand jury with detailed legal instructions, the government should at a minimum read to them the statutes upon which the charges are based.").

This purported error, the Magistrate Court concluded, could not "have been harmless," as the Grand Jury could not have found "probable cause without knowing the elements of the offenses named in the Second Superseding Indictment."  *Id.* at 5.  In that regard, even though it failed to cite any specific provision of Rule 6(e) authorizing the dissemination of Grand Jury minutes, the Magistrate Court anchored its theory of disclosure upon a theory of why the Indictment should be dismissed.  *See id.*; *see* Fed. R. Crim. P.

10

6(e)(3)(E)(ii) (authorizing disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury").

### G.    The Government's Response to the Order to Show Cause

Because the Magistrate Court premised its initial disclosure order on Rule 6(e)(3)(E)(ii), *see* Non-Disp. Oral Arg. Tran., at 102–03, the government responded to the Order to Show Cause by arguing (1) that disclosure under Rule 6(e)(3)(E)(ii) was improper because there was no legal basis to dismiss the indictment due to an instructional error before the Grand Jury and (2) the government properly instructed the Grand Jury when it read an indictment that tracked the elements of the applicable statutes.  *See* Gov. Resp. Order to Show Cause, (dated Sept. 29, 2025).[1]

### H.    The Magistrate Court's Second Disclosure Order

The Magistrate Court nevertheless ordered that the Grand Jury minutes related to a purported instructional error—as opposed to material bearing on Overt Act ¶ 25—be disclosed.  *See* Dec. & Order, Dkt. 643, (dated Oct. 16, 2025).  In the Decision and Order, the Magistrate Court claimed that "[t]he [g]overnment [m]isconstrue[d] the [b]asis for the [o]rder to [s]how [c]ause" when it argued that "there [was] no basis to disclose the instructions provided to the Grand Jury under Rule 6(e)(3)(E)(ii)."  *Id.* at 1 (bold, capitalization, and alteration omitted).  That is so, the Magistrate Court reasoned for the first time, because it was actually ordering the material "preliminary to or in connection with a judicial proceeding."  FED. R. CRIM. P. 6(e)(3)(E)(i).

---

[1]    This response has not yet been assigned a docket number, but is on file with the Magistrate Court.  Simultaneous to the filing of these objections, the government will send via USAFx a proposed redacted version of its *ex parte* response to the Magistrate Court's Order to Show Cause.

The Magistrate Court proceeded to prospectively justify the dismissal of the indictment, and, by extension, the disclosure of grand jury minutes, through two core claims. First, the Magistrate Court targeted various perceived facial deficiencies concerning the indictment. Specifically, the Magistrate Court reasoned that the "Second Superseding Indictment is replete with misstatements or incomplete descriptions of the statutes upon which its charges are based." *Id.* In particular, it noted that Count 4, which charges Mr. Gogolack with distribution of fentanyl resulting in a death, cites to, but does not include, the penalty language in § 841(b)(1)(C); Counts 9 and 10, which charge Mr. Gogolack with firearm offenses, do not "cite the text of § 924(a)(8)," a penalty provision regarding certain gun crimes, "or otherwise describe its provisions"; and Counts 19 through 21 do "not cite the text of [18 U.S.C.] § 2," the aiding and abetting statute, even though they charge Mr. Hinkle with § 2 liability.[2] *Id.* at 5–6. Additionally, the Magistrate Court claimed that the Indictment improperly used the word "was", as opposed to the word "is", when charging Messrs, Gogolack, Ermin, and Roncone with being unlawful users in possession of firearms because § 922(g)(3) only criminalizes the possession of firearms for present-day users of narcotics. *See id.* at 6–7 (referring to Counts 10, 24, and 25).

Second, the Magistrate Court concluded that the government was beholden to provide comprehensive legal instructions because ███████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████. *Id.* at 5. Because ████████████████████

---

[2]    Though the point of these attacks for the purposes of justifying the disclosure of grand jury material is unclear, they seem to be, at minimum, in service of the idea that the government was somehow required to instruct the Grand Jury on the penalties associated with each charge.

████████████████████████████████████ the Magistrate Court concluded that the government "misled the grand jury, intentionally or otherwise." *Id.* ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ *See id.* at 7–8.  Lastly, and without any regard for the fact that the grand jury presentation spanned many months, included myriad exhibits, and featured dozens of witnesses, the Magistrate Court claimed that the length of the grand jury's deliberations "raise[d] concern as to whether it acted on its own judgment, independently of the prosecutor . . . ."

For these reasons, the Magistrate Court expressed its "grave doubts" that the grand jury "acted independently of the government in returning the Second Superseding Indictment" and ordered disclosure so that the defendants could seek "[d]ismissal of [the] indictment." *Id.* at 9.  Despite reviewing thousands of pages of records, at no point during this litigation has the Magistrate Court ruled on the core thesis of the Messrs. Gerace, Ermin, and Hinkle's initial motion for disclosure: that the government misled the Grand Jury with respect to Overt Act ¶ 25.

I.    **The Magistrate Court's Reversal of its Prior Order Denying the Disclosure of Grand Jury Materials to Defendant Knight**

On October 22, 2025, the Magistrate Court *sua sponte* reversed its earlier decision denying Mr. Knight's motion for the disclosure of Grand Jury minutes.  *See* Dec. & Order, Dkt. 647, (dated Oct. 22, 2025).  Specifically, the Magistrate Court stated it was "reconsidering" its "earlier view that the grand jury had not been misled" and "conclude[d] that the grand jury materials relevant to the § 1001(a)(2) charge (including instructions or lack

13

thereof) should be released to" Mr. Knight.  *Id.* at 2.  The Magistrate Court neither specified the basis for its conclusion that the government misled the Grand Jury nor the scope of the materials it considered relevant to Mr. Knight's false statement charge.  *See id.*

## II.   STANDARD OF REVIEW

This Court may set the Magistrate Court's decision aside if it is "contrary to law or clearly erroneous."  FED. R. CRIM. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A).  "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Feneziani*, No. 05-CR-290E, 2007 WL 1613630, at *1 (W.D.N.Y. June 1, 2007) (quoting *Garcia v. Teitler*, 443 F.3d 202, 211 (2d Cir. 2006)).

The standard's "contrary to law" prong "is concerned with the [M]agistrate [Court's] legal conclusions, which are 'contrary to law' if they 'run[] counter to controlling authority.'" *IBM Corp. v. Micro Focus (US), Inc.*, No. 22 CV 9910 (VB), 2024 WL 1242534, at *1 (S.D.N.Y. Mar. 22, 2024) (quoting *Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008)); *Pall Corp.*, 655 F. Supp. 2d at 172 (noting further that "[a]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure" (quoting *EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004))).

## III.   LEGAL FRAMEWORKS

### A.   Disclosures of Grand Jury Material Pursuant to Rule 6(e)(3)(E)(i)

Rule 6 of the Federal Rules of Criminal Procedure comprehensively governs the conduct of grand-jury proceedings, and subpart (e) of the rule requires that all matters occurring before the grand jury must be kept secret, subject to certain narrow exceptions.  *See* FED. R. CRIM. P. 6(e)(2)(B), (e)(3)(E).  One such exception—Rule 6(e)(3)(E)(i)—authorizes

14

the disclosure of Grand Jury material "preliminary to" or "in connection with" a judicial proceeding. Disclosures that are made "preliminary to" a judicial proceeding are those made where the judicial proceeding has not yet been initiated. *United States v. Baggot*, 463 U.S. 476, 479 (1983). The Rule's "in connection with" language refers to an already-pending judicial proceeding. *Id.* Thus, "the Rule contemplates only uses [of Grand Jury material] related fairly directly to some identifiable litigation, pending or anticipated"; "it is not enough to show that some litigation may emerge from the matter in which the material is to be used, or even that the litigation is factually likely to emerge." *Id.* at 480. Instead, "[t]he focus is on the *actual use* to be made of the material," and "[i]f the primary purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under [the Rule] is not permitted." *Id.*

Moreover, courts have determined that this "first exception applies only to situations where the judicial proceeding for which disclosure of grand jury material is sought is a judicial proceeding different from the criminal trial authorized by the grand jury's indictment." *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 615 (E.D. Va. 2004). Were it otherwise, Rule 6(e)(3)(E)(i) "would render the second exception"—Rule 6(e)(3)(E)(ii)—"superfluous, as the first exception would always encompass the second." *Id.*; *see United States v. Spivak*, 735 F. Supp. 3d 902, 926 (N.D. Ohio) ("Though unartfully drafted, this exception applies where the judicial proceeding for which disclosure is sought differs from the criminal trial that the grand jury's indictment authorizes."), *on reconsideration in part on other grounds*, 744 F. Supp. 3d 805 (N.D. Ohio 2024); *United States v. Bunty*, 617 F. Supp. 2d 359, 372 (E.D.Pa. 2008) (similar); 1 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Criminal § 108 (4th ed. 2021) ("[C]ourts have interpreted their authority to disclose material

'preliminarily to or in connection with a judicial proceeding' narrowly, to prevent the exception from swallowing the secrecy rule.").

### B. Disclosures of Grand Jury Material Pursuant to Rule 6(e)(3)(E)(ii) and Dismissals of Indictments due to Grand Jury Misconduct

The second exception relevant here—found in Rule 6(e)(3)(E)(ii)—provides that a court may authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Thus, to obtain material under the Rule, a defendant must identify a basis to dismiss the indictment due to conduct that occurred before the grand jury. *See id.*; *see also United States v. Minerd*, 299 F. App'x 110, 111 (3d Cir. 2008) (concluding that the defendant must show that there is a basis to dismiss the indictment when he seeks grand jury material pursuant to Rule 6(e)(3)(E)(ii)); *United States v. Chang*, 574 F. Supp. 3d 94, 99 (E.D.N.Y. 2021) (concluding that even if the government did present materially false evidence, it was harmless error as it had "no bearing on the elements of the crime charged and [thus] would not be basis of dismissing the indictment"); *United States v. McElroy*, 392 F. Supp. 2d 115, 117 (D. Mass. 2005) ("Since no basis for a dismissal of the indictment has been demonstrated, disclosure is not permitted."); *Loc Tien Nguyen*, 314 F. Supp. 2d at 616 ("[A] defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" (quoting *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y.1992))).[3]

---

[3] This condition is separate and independent from the particularized need test. *See United States v. Sells Engn'rg*, 463 U.S. 418, 443 (1983). "The particularized need test is a criterion of *degree*;" the 'ground may exist language' of Rule 6(e)(3)(E)(ii) "imposes an additional criterion governing the *kind* of need that must be

An indictment may be dismissed due to misconduct in the Grand Jury only where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by th[e] [Supreme] Court and by Congress to ensure the integrity of the grand jury's functions." *United States v. Williams*, 504 U.S. 36, 47 (1992) (quoting *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in judgment); *see United States v. Capoccia*, 247 F. App'x 311, 314 (2d Cir. 2007) (Panel Op. Sotomayor, J., Katzmann, J., Gertner, J.) (concluding that an indictment could not be dismissed based on purported grand jury misconduct where the defendant "ha[d] not established a violation of one of the few, clear rules which were carefully drafted and approved by [the Supreme] Court and by Congress to ensure the integrity of the grand jury's functions" (internal quotations omitted)).

None of the "few, clear rules" identified by *Williams* as providing a basis for a motion to dismiss if violated were purely judicial inventions. *See id.* Rather, all were creatures of the Federal Rules of Criminal Procedure[4] or statute that survived bicameralism and presentment through the democratically elected branches of government:

> Rule 6 of the Federal Rules of Criminal Procedure contains a number of such rules, providing, for example, that "no person other than the jurors may be present while the grand jury is deliberating or voting," Rule 6(d), and placing strict controls on disclosure of "matters occurring before the grand jury," Rule 6(e)[.] Additional standards of behavior for prosecutors (and others) are set forth in the United States Code. *See* 18 U.S.C. §§ 6002, 6003 (setting forth procedures for granting a witness

---

shown," and thus "reflects a judgment that not every particularized showing "is an appropriate reason for breaching grand jury secrecy." *Baggot*, 463 U.S. at 480 (1983).

[4]    Via the authority conveyed to the Supreme Court through the Rules Enabling Act, the Judicial Conference of the United States, the national policymaking body for the federal courts, proposes amendments to the federal procedural rules, solicits public comments, and then submits amendments for consideration to the Judicial Conference's Committee on Rules of Practice and Procedure. Any approved amendments are then transmitted to the Supreme Court for its consideration and adoption. *See* Joanna R. Lampe, *Congress, the Judiciary, and Civil and Criminal Procedure*, Congress. Research Serv., (dated May 22, 2020), https://www.congress.gov/crs-product/IF11557#:~:text=The%20Supreme%20Court%20adopted%20the,effect%20without%20modification%20in%201938., (last accessed Nov. 26, 2025).

immunity from prosecution); § 1623 (criminalizing false declarations before grand jury); § 2515 (prohibiting grand jury use of unlawfully intercepted wire or oral communications); § 1622 (criminalizing subornation of perjury). . . .

*Williams*, 504 U.S. at 74 n. 6 (internal case citations omitted).

The judiciary's inability to "*prescribe[e]* standards of prosecutorial conduct in the first instance," as opposed to "enforcing or vindicating legally compelled standards of prosecutorial conduct" codified in statutes and the Federal Rules of Criminal Procedure follows from its institutional separation from the grand jury. *Id.* at 46–47. Paralleling this lack of supervisory power, the federal judiciary may not dismiss an indictment due to "the quality or adequacy of the evidence" or "the prosecutor's presentation" before the grand jury, even though it possesses that power for trials conducted before *petit* juries.[5] *Id.* at 54. Instead, "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).

A contrary rule would essentially force two trials: one on the activities before the grand jury and another involving the merits of the government's evidence before a petit jury. *Id.* at 362–63. Not only is this redundancy "not required by the [F]ifth [A]mendment," *id.*, but, as the Supreme Court has repeatedly admonished, "[r]eview of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it]," *Williams*, 504 U.S. at 54 (quoting *Costello*, 350 U.S. at 364). In short, "[t]he grand jury gets to say—without any review,

_____

[5]   *Williams'* limitation on the judicial power also ensures that only violations of democratically-supported rules and statutes will result in the dismissal of an indictment, which itself is the fruit of a democratically-supported legislative and Grand Jury approval process.

oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 328 (2014) (Kagan, J.).

### C.    Grand Jury Instructions

The grand jury's core function—determining whether probable cause exists to charge a serious crime—is "relatively undemanding" such that "the value of requiring . . . 'formalities and safeguards' would 'in most cases . . . be too slight.'"  *Kaley*, 571 U.S. at 339 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975)).  Given the dearth of "technical rules" binding the grand jury's work, *Williams*, 504 U.S. at 50 (quoting *Costello*, 350 U.S. at 364), the government is not required to provide it with the kind of legal instructions petit juries are accustomed to receiving.[6]  *See United States v. Smith*, 105 F. Supp. 3d 255, 260–61 (W.D.N.Y. 2015) (Wolford, J.) ("As an initial matter, the Government is not required to provide a grand jury with legal instructions." (citing *United States v. Lopez–Lopez,* 282 F.3d 1, 9 (1st Cir. 2002)); *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) ("The prosecutor is under no obligation to give the grand jury legal instructions."); *United States v. Dorsey*, 77 F.3d 490, *2 (9th Cir. 1996) (Table Op.) (rejecting defendant's argument "that the grand jury should have received jury instructions similar to those given at the end of a trial" and noting that "such instructions are not required"); *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981) ("Th[e] indictment is normally prepared by the prosecutor, who is presumably acquainted with the applicable law.  We are not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions." (internal quotations and citations omitted)).

---

[6]        And where some form of instructions is given, the instructions need not lay out all elements of the charged crime as "long as the instructions given are not flagrantly misleading or so long as all the elements are at least implied."  *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989), *overruled on other grounds by Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989).

Rather, the government adequately informs the grand jury of the charges by reading a properly prepared indictment that reflects each offense's essential elements. *See United States v. Linetsky*, 533 F.2d 192 (5th Cir. 1976) (indicating that an indictment's "mere tracing of the words" in a charging statute "was sufficient" to instruct the grand jury (quoting *United States v. Slepicoff*, 524 F.2d 1244, 1247 (5th Cir. 1974))); *United States v. Labbad*, No. EDCR 03-00039(A)-RT, 2013 WL 12387563, at *8 (C.D. Cal. Mar. 18, 2013) (rejecting the defendant's challenge to his indictment for want of grand jury instructions where "the prosecutor read the full text of the proposed [superseding indictment] to the grand jurors" and the superseding indictment, itself, "more than adequately implied all elements of the charged [narcotics] conspiracy"); LaFave et al., 4 Criminal Procedure § 15.7(g) n. 209 ("Pre-*Williams* federal decisions addressing challenges to the instruction . . . noted that the key was following the statutory definition, *which was done in placing a properly drafted proposed indictment put before the grand jury*." (emphasis added)).

## IV.    The Magistrate Court's Disclosure Orders are Clearly Erroneous and Contrary to Law

The Magistrate Court's two disclosure orders are clearly erroneous and contrary to law in five respects.  First, the Magistrate Court wrongly relied on Rule 6(e)(3)(E)(i) as the authority justifying its ordered disclosures.  Because that rule is inapplicable to judicial proceedings initiated by the very indictment the defendants seek to the challenge, it cannot authorize disclosure here.  Second, the Magistrate Court's disclosure orders fail to identify any basis upon which the indictment may be dismissed, as required by Rule 6(e)(3)(E)(ii), the only rule relevant to these proceedings.  Third, the Magistrate Court improperly assumed that the government was required to provide the grand jury with comprehensive jury instructions of the sort *petit* juries receive.  Such instructions are unnecessary for the grand jury to discharge

its "relatively undemanding" and non-technical task of assessing cases for probable cause. *Kaley*, 571 U.S. at 338. Fourth, the Magistrate Court's factual finding that the Impanelment AUSA "promised" the grand jury that they would receive such comprehensive instructions is clearly erroneous, as no such "promise[]" was ever provided. Fifth, and finally, the process by which the Magistrate Court ordered the disclosure of the grand jury materials ran headlong into the party-presentation principle, transforming the court from a neutral arbiter of issues framed by the parties into an adversary promoting—and defending—its own rationales in favor of disclosure. For all of these reasons, the Court should set aside the Magistrate Court's disclosure orders and vacate any express or implied prosecutorial misconduct findings.

A.    **The Magistrate Court wrongly relied on Rule 6(e)(3)(E)(i), which cannot authorize the disclosure of grand jury material where the material is only relevant to a motion to dismiss the indictment.**

Ignoring its own prior statements, the Magistrate Court explained that it was ordering disclosure pursuant to Rule 6(e)(3)(E)(i), which permits the disclosure of grand jury material "preliminary to or in connection with a judicial proceeding." Dkt. 643 at 1; *but see* Non-Disp. Mots. Oral Arg. Tran., at 102–03 ("Magistrate Court: Criminal Rule 6(e)(3)(E) states that the Court *may* authorize disclosure at a time and a manner and subject to any other conditions that it directs of a Grand Jury matter, sub (2), *at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury*." (emphasis added)). The Magistrate Court's disclosure orders are contrary to law because Rule 6(e)(3)(E)(i) cannot support disclosure where the "judicial proceeding" is the same one as that initiated by the grand jury's indictment. *See* FED. R. CRIM. P. 6(e)(3)(E)(i); *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 72 (D.C. Cir. 1983) ("We reject appellees' potentially rule-swallowing reading of the 'judicial proceeding' exception. Rule 6(e)(3)(C)(i) disclosure orders

are appropriate 'to avoid a possible injustice in *another* judicial proceeding.'" (first quoting FED. R. CRIM. P. 6(e)(3)(E)(i), and then quoting *Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 222 (1979) (emphasis added)); *Spivak*, 735 F. Supp. 3d at 926 (noting that the exception applies when the "judicial proceeding . . . differs from the criminal trial that the grand jury's indictment authorizes"); *Hiss v. Dep't of Just.*, 441 F. Supp. 69, 70 (S.D.N.Y. 1977) ("Clearly, permission to disclose for use in connection with a 'judicial proceeding' does not include the very proceeding instituted for the purpose of obtaining disclosure.").

Otherwise, Rule 6(e)(3)(E)(i) "would render" Rule 6(e)(3)(E)(ii), which authorizes disclosure where there may be grounds to dismiss an indictment, "superfluous, as the first exception would always encompass the second." *Loc Tien Nguyen*, 314 F. Supp. 2d at 616. Stated otherwise, because all motions to dismiss indictments occur within the context of existing judicial proceedings, if Rule 6(e)(3)(E)(i) authorized disclosure whenever pending criminal litigation existed, there would be no need for Rule 6(e)(3)(E)(ii).

Moreover, because "the specific governs the general" when choosing between two potentially overlapping procedural rules, the rule specifically designed for disclosures of grand jury material in connection with motions to dismiss—that is, Rule 6(e)(3)(E)(ii)—exclusively applies here. *See Kemp v. United States*, 596 U.S. 528, 537 (2022) (explaining that when procedural overlap creates conflict, "courts may . . . [r]esort to ordinary rules of statutory construction when selecting which provision would govern in a particular case" (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 644 (2012) ("[T]he specific governs the general . . ."))).

Because the entire foundation of the Magistrate Court's disclosure orders elides the governing legal framework, they are necessarily contrary to law. *See Highmark Inc. v. Allcare*

22

*Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014) (noting that a "court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence" (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990))); *see First Wireless Grp., Inc.*, 225 F.R.D. at 405 (noting that "[a]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure"). Accordingly, on this basis alone, the Magistrate Court's disclosure orders should be set aside.

### B.    Rule 6(e)(3)(E)(ii) cannot authorize the disclosure of grand jury material because there is no basis upon which the indictment may be dismissed.

Rule 6(e)(3)(E)(ii) cannot rescue the Magistrate Court's disclosure orders. Rule 6(e)(3)(E)(ii) instructs that a court may disclose secret grand jury material where a defendant has shown that the material is germane to a potential basis to dismiss the indictment. Thus, for a court to assert the power to release secret grand jury material, it must conclude that a basis exists to dismiss the indictment "because of matters occurring before the grand jury." FED. R. CRIM. P. 6(e)(3)(E). If no such basis can be identified, then disclosure is not authorized. *Hart*, 513 F. Supp. at 658. To dismiss an indictment due to conduct before the grand jury, the defendants must show that the conduct violated a "clear rule[]" passed by Congress or approved of by the Supreme Court. *Williams*, 504 U.S. at 46. Because no such rule exists, there is no basis to dismiss the indictment and, thus, no basis permitting the disclosure of grand jury materials.[7]

Furthermore, even if the Supreme Court's decision in *Williams* did not apply, the government adequately instructed the grand jury when it read an indictment that included all

---

[7]    Any argument attempting to salvage the Magistrate Court's disclosure orders based on Rule 6(e)(3)(E)(ii) should be rejected given the Magistrate Court's express rejection of that rule as a procedural vehicle authorizing disclosure. *See* Dkt. 643 (expressly commenting that the government was wrong to construe the basis of its disclosure rationale as resting with Rule 6(e)(3)(E)(ii)). Nevertheless, even if the Court considers such arguments, it should reject them for the reasons stated herein.

of the essential elements of the charged offenses. Because the grand jury did not need anything beyond the essential elements of each charge to assess the case for probable cause, the Magistrate Court's assumed theory of prosecutorial misconduct—that the government erroneously failed to provide the grand jury comprehensive legal instructions—is contrary to law. Accordingly, should the Court reach this issue, it should conclude that the Magistrate Court's disclosure orders are contrary to law.

### 1. The government did not violate one of the "few, clear rules" that could authorize the dismissal of the indictment.

The Magistrate Court's disclosure orders ignore the Supreme Court's maxim that dismissals of indictments due to conduct before the grand jury must be confined to violations of a "clear rule[]" approved by it and Congress. *Williams*, 504 U.S. at 46; *see United States v. Capoccia*, 247 F. App'x 311, 314 (2d Cir. 2007) (unpublished) (affirming the district court's denial of a motion to dismiss an indictment premised upon "the prosecution's allegedly improper removal and nondisclosure of several pages of a grand jury transcript" because the defendant "ha[d] not established a 'violation of one of the . . . clear rules'" designed "'to ensure the grand jury's functions'" (quoting *Williams*, 504 U.S. at 36)). The Magistrate Court did not even attempt to locate a "clear rule" whose violation could authorize the dismissal of the Indictment. *See generally* Dkts. 643, 647.

That is because no such rule exists. Instead, citing judicial authority pre-dating *Williams*, the Magistrate Court reasoned that the government must "furnish [the grand jury] with controlling legal principles" to guide its deliberations, and implied both that it failed to do so when it did not provide comprehensive instructions and that such failure warranted dismissal. Dkt. 643 at 3 (quoting *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979)), 9 ("It is not for me to decide whether the Second Superseding Indictment should be dismissed.

24

However, for the reasons discussed herein and in my Order to Show Cause, I have 'grave doubts' that this grand jury acted independently of the government in returning the Second Superseding Indictment."); Dkt. 647.

This argument ignores the *Williams* standard. *See* 504 U.S. at 46. There is no "clear rule[]" requiring the government to provide the grand jury with the kind of comprehensive legal instructions the Magistrate Court believes are necessary. *Id.*; LaFave et al., 4 Criminal Procedure § 15.7(g) ("After *Williams*, a federal court presumably would lack authority even to dismiss on that ground unless such instructions violated a statute, court rule, or constitutional command."). Indeed, prior to 1906, federal prosecutors were not even permitted to participate in grand jury proceedings, *see Latham v. United States*, 226 F. 420, 424 (1st Cir. 1915) (discussing 34 Stat. 816, c. 3935 (June 1906)), meaning that for most of our nation's 249-year-old history, grand juries have not received the kind of learned legal training that the Magistrate Court thinks is necessary here. *Cf. Williams*, 504 U.S. at 51–52 (looking at the grand jury's historical practice to determine whether a proposed rule of conduct was necessary).

To prescribe such rules is not only out of step with the nature of the grand jury work, which is "not hampered by rigid procedural or evidentia[ry] rules," *Costello*, 350 U.S. at 362, but also would require a court to rely on the very kind of inherent supervisory authority over the grand jury that *Williams* rejected, *see* 504 U.S. at 46–47 ("We did not hold in *Bank of Nova Scotia* . . . that the courts' supervisory power could be used, not merely as a means of enforcing or vindicating legally compelled standards of prosecutorial conduct before the grand jury, but as a means of prescribing those standards of prosecutorial conduct in the first instance—just as it may be used as a means of establishing standards of prosecutorial conduct before the

25

courts themselves. . . . Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such 'supervisory' judicial authority exists . . . .").

In sum, because the government's reading of the indictment did not violate one of the "clear rules" approved of by Congress and the Supreme Court, neither the defendants nor the Magistrate Court can show "a ground may exist to dismiss the indictment." FED. R. CRIM. P. 6(e)(3)(E)(ii). Consequently, Rule 6(e)(3)(E)(ii) cannot authorize the disclosure of secret grand jury materials to the defendants and the Magistrate Court's decisions to the contrary should be set aside as contrary to law.

## 2. Dismissal is unavailable where, as here, the government ███████████ ███████████

Even if the *Williams* standard did not apply, the Magistrate Court's central factual and legal premise—███████████████████████████████—is clearly wrong. The government adequately "furnish[ed] [the grand jury] with controlling legal principles" when it ████████████████████████████████████████████████. *Ciambrone*, 601 F.2d at 66. Because nothing further is required to facilitate the grand jury's "relatively undemanding" probable cause assessment, the government did not commit prosecutorial misconduct ████████████████████████████ that the Magistrate Court has decided (contrary to law) were necessary. *Kaley*, 671 U.S. at 338–39. Accordingly, there is no basis upon which the indictment may be dismissed and, once again, no basis to disclose the grand jury materials. As such, the Magistrate Court's disclosure orders should be set aside.

a. **Reading a properly prepared indictment is a permissible method of instructing the grand jury given the non-technical nature of the probable cause inquiry.**

This case does not concern whether grand juries benefit from receiving instruction on the "controlling legal principles" applicable to their probable cause determinations. *See* Dkt. 643 (quoting *Ciambrone*, 601 F.2d at 622). Rather, the question is what those "controlling legal principles", *Ciambrone*, 601 F.2d at 622, must consist of for the grand jury to "intelligently . . . decide whether a crime has been committed." *United States v. Twersky*, No. S2 92 CR 1082 (SWK), 1994 WL 319367, at *4 (S.D.N.Y. 1994). None of the cases cited by the Magistrate Court—to include, *Ciambrone*, *Twersky*, *United States v. Fisher*, 225 F. Supp. 3d 151 (W.D.N.Y. 2016)—provide answers.

Three basic principles, however, shed light on what instructional content is necessary for the grand jury to discharge its task. First, no assessment of what the grand jury's work requires is complete without consideration of what that work entails. Whereas petit juries assess cases against the "heavy" and "exacting" beyond-a-reasonable-doubt standard, *United States v. Hall*, 198 F.2d 726, 730 (2d Cir. 1952), the probable cause standard that defines the grand jury's work is "relatively undemanding," and "requires only the 'kind of fair probability on which reasonable and prudent [people,] *not legal technicians*, act.'" *Kaley*, 671 U.S. at 338–39 (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013) and emphasis added). Unlike its beyond-a-reasonable-doubt counterpart, the probable cause standard "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *United States v. Williams*, 181 F. Supp. 2d 267, 281 (S.D.N.Y. 2001) (quoting *Adams v. Williams*, 407 U.S. 143, 148 (1972)); *see Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (noting that the probable cause standard does not demand "concrete proof

of each element of a crime" (quoting *Brewton v. City of New York*, 550 F. Supp. 2d 355, 365 (E.D.N.Y. 2008))).

Second, the nature and comprehensiveness of the instructions to which any kind of jury is entitled corresponds to the rigor of that jury's task. Petit juries, for example, require instructions that define the legal and factual issues before them "with substantial particularity." *United States v. Hill*, 417 F.2d 279, 281 (5th Cir. 1969). But the same cannot be said for grand juries. In fact, owing to the nature of the grand jury's work, the Supreme Court has repeatedly rejected requests to extend the "formalities and safeguards" that attach to criminal trials to the grand jury, reasoning time and again that their added value "would '[i]n most cases . . . be too slight.'" *Id.* at 338 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975)); *see Gerstein*, 420 U.S. at 121 ("This is not to say that confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause."); *Costello*, 350 U.S. at 362 ("Grand jurors were selected from the body of the people and their work was not hampered by rigid procedural or evidential rules. In fact, grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deemed satisfactory.").

Third, as the Second Circuit has acknowledged, "[o]nly the *words* of the indictment give evidence of *whether the grand jury* considered and included within the offenses charged the essential element[s]" of the crimes. *United States v. Gonzalez*, 686 F.3d 122, 129 (2d Cir. 2012) (emphasis original). In that vein, "[a]n indictment that does not set out all of the essential

elements of the offense charged is defective," as it suggests the grand jury did not fully comprehend what it was charging. *Id.*; *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("If the indictment does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury, or that the grand jury acted properly in indicting him." (internal citations omitted)). On the flip side, an indictment that contains all the necessary elements of an offense—and was returned by a properly constituted grand jury—is sufficiently informative and ensures the grand jury functioned properly. *Hamling v. United States*, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (same); *cf. Pirro*, 212 F.3d at 92; LAFAVE ET AL., 4 CRIMINAL PROCEDURE § 15.7(g) ("Pre-*Williams* federal decisions addressing challenges to the instruction . . . noted that the key was following the statutory definition, which was done in placing a properly drafted proposed indictment before the grand jury." (emphasis added)).

In combination, these principles establish that the government need not provide demanding, technical, and specific instructions to assist the grand jury in carrying out an "undemanding", non-technical, and more generalized job. *Kaley*, 671 U.S. at 338; *Williams*, 181 F. Supp. 2d at 281. Likewise, just as an indictment that contains the essential elements of an offense adequately informs the defendant of the crimes with which he is charged, the same, when read aloud to the grand jury, sufficiently apprises each grand juror of the essential components of the offense she is being asked to indict on.

Because ██████████████████████████████████████, the government did not, as the Magistrate Court insists, deprive the grand jury of the requisite "controlling legal principles," *Ciambrone*, 601 F.2d at 622, necessary for it to "intelligently . . . decide whether a crime ha[d] been committed," *Twersky*, 1994 WL 319367, *4. *See Linetsky*, 533 F.2d at 200 (rejecting a defendant's claim that the prosecutor gave the grand jury improper instructions where the indictment traced the statutory language (citing *Hamling*, 418 U.S. at 117)); *Hart*, 513 F. Supp. at 658 (denying a defendant's motion for disclosure of grand jury minutes based on assertions that the grand jury did not have the "definitions of the terms they were applying" where the indictment included the "essential elements of the crime charged"); *Labbad*, 2013 WL 12387563, at *8 (concluding that the government was not required to provide the grand jury with any legal instructions and that, in any event, reading a properly prepared indictment "more than adequately implied all elements" of the charged offenses); LaFave et al., 4 Criminal Procedure § 15.7(g) n. 290 (noting that the government satisfactorily instructs the grand jury by "placing a properly drafted proposed indictment" that "follow[s] the statutory definition[s]"). For these reasons, the Magistrate Court's orders are contrary to law.

**b.    The Magistrate Court's objections to the indictment's facial validity are clearly erroneous and contrary to law.**

Rather than reject this framework on the merits, the Magistrate Court responded that the indictment was not properly prepared, and thus its reading to the grand jury could not ensure the independence of the grand jury's vote. Specifically, the Magistrate Court opined that the Indictment "is replete with misstatements or incomplete descriptions of the statutes upon which the charges are based." Dkt. 643 (citing concerns with Count 4; Counts 19 through 21; Counts 9 and 10; Counts 10, 24, and 25; and Counts 5, 23, and 26). Given these

purported misstatements, the Magistrate Court concluded that neither it nor the defendants could "have confidence that the grand jury acted independent of the government in returning *any*" of the indictment's counts.[8]  *Id.* at 8.  But, as detailed below, each of the Magistrate Court's objections are premised upon multiple factual, legal, and linguistical errors.

i.    **The Magistrate Court's claims with respect to Count 4 are clearly erroneous, contrary to Supreme Court precedent, and ignore long-standing charging conventions.**

*Count 4.*  Count 4 charges Mr. Gogolack with distribution of fentanyl resulting in death in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), as pictured below:

**COUNT 4**

**(Distribution of Fentanyl Resulting in Death)**

**The Grand Jury Further Charges That:**

Between on or about July 31, 2023, and August 1, 2023, in the Western District of New York, the defendant, **SIMON GOGOLACK a/k/a Greek**, did knowingly, intentionally, and unlawfully possess with intent to distribute, and distribute, fentanyl, a Schedule II controlled substance; and the death of Crystal Quinn, resulted from the use of such substances.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).**

Dkt. 24 at 34.

The Magistrate Court claims that Count 4 "does not cite the text of § 841(b)(1)(C) or otherwise describe its provisions."  Dkt. 643 at 5.  "Had it done so," the Magistrate Court reasoned, "it would have been obvious to the grand jury that § 841(b)(1)(C) cannot have been violated because it is not a crime" but, rather, a penalty provision.  *Id.* at 5–6.  These conclusions collapse on two fronts.

---

[8]    The Magistrate Court never explained why, if the indictment is facially defective, grand jury minutes are necessary to vindicate a motion to dismiss.  Under normal circumstances, a facially defective indictment is subject to dismissal under Rule 12.  In that respect, to accept the Magistrate Court's arguments on their face necessarily requires rejecting its proposed remedy: the disclosure of grand jury minutes.

First, the Magistrate Court clearly erred when it concluded that Count 4 did not reflect any of § 841(b)(1)(C)'s language. Count 4 alleges that "the *death* of Crystal Quinn[] *resulted from the use of such substances*" that Mr. Gogolack distributed. Dkt. 24 at 34 (emphasis added). Section 841(b)(1)(C) provides that "if *death* or serious bodily injury *results from the use of such substances*," the applicable mandatory minimum penalty increases from zero years in prison to twenty. 21 U.S.C. § 841(b)(1)(C) (emphasis added). Accordingly, Count 4 contains the "death results" provisions of § 841(b)(1)(C), as it must under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt.").

Second, even if Count 4's charging language did not reflect any of § 841(b)(1)(C)'s provisions, it is not defective. Indictments should put the defendant on notice regarding the potential sentence triggered by the offense charged. In furtherance of that laudable goal, it is a standard practice for the Second Circuit, district courts, and U.S. Attorney's Offices to include penalty provisions when referencing violations. *See, e.g.*, *United States v. Prawl*, 149 F. 4th 176, 181 (2d Cir. 2025) ("Defendant-Appellant Brandon Prawl appeals a judgment of the United States District Court for the Northern District of New York (Suddaby, J.), entered March 31, 2023, convicting him after trial of distribution of heroin in *violation of 21 U.S.C. § 841(b)(1)(C) . . .*" (emphasis added)); *United States v. Aller*, 486 F. Supp. 3d 752, 754 (S.D.N.Y. 2020) (noting that the defendant was charged with "one count of conspiracy, in violation of 21 U.S.C. § 846, to distribute and possess with intent to distribute less than five grams of crack cocaine *in violation of 21 U.S.C. § 841(b)(1)(C)*" (emphasis added)); Indict., at 1, *United States v.*

*Crowell*, 25-CR-465, ECF No. 13, (dated Oct. 9, 2025) (referring to "substances containing a detectable amount of cocaine, *in violation of Title 21, United States Code, Section 841(b)(1)(C)*" (emphasis added)).  As far as counsel can tell, our circuit's use of this convention goes back to at least 1990.  *See United States v. Dyke*, 901 F.2d 285, 285 (2d Cir. 1990).  There simply is nothing wrong with how Count 4 is structured or phrased, and therefore its reading to the grand jury was proper.[9]

### ii.    The Magistrate Court's objections to Counts 19 through 21 are contrary to law.

The Magistrate Court next targets Counts 19 through 21, which charged Mr. Hinkle "acting alone, with violating 18 U.S.C. § 2 as well as other federal statutes"—to wit, manufacturing and possessing with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii), maintaining a drug-involved premise, in violation of 21 U.S.C. § 856(a)(1), and possessing firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Dkt. 643 at 6; Dkt. 24 at 43–44.  The Magistrate Court faults the indictment with "not cit[ing] the text of § 2 or otherwise describ[ing] its provisions" and explains that, "[h]ad it done so, it would have been obvious to the grand jury that § 2 cannot itself have been violated, because it 'does not define a crime . . . .'" Dkt. 643 at 6 (quoting *United States v. Campbell*, 426 F. 2d 547, 553 (2d Cir. 1970)).

This reasoning is unpersuasive.  As courts throughout the Second Circuit have recognized, "[a] charging document is not required to cite 18 U.S.C. § 2 expressly, nor to specifically state that the government is proceeding on a theory of aiding and abetting," *United*

---

[9]    It is unclear if the Magistrate Court thinks that the government erred in failing to read the penalty provisions of each statute to the grand jury.  If so, the Court should note that prosecutors are cautioned against reading such provisions, even though they are cited in the indictment, because "when deciding whether or not to indict, [the grand jury] should not be concerned about punishment in the event of conviction."  *United States v. Navarro-Vargas II*, 408 F.3d 1184, 1187 (9th Cir. 2005) (en banc).

*States v. Gonzalez*, No. 3:20MJ00347 (SALM), 2020 WL 3188482, at *2 (D. Conn. June 15, 2020), because "an aiding and abetting charge is arguably implicit in every indictment," *United States v. Mucciante*, 21 F.3d 1228, 1234 (2d Cir. 1994). Here, the government provided Mr. Hinkle more notice than necessary of its intent to consider an aiding and abetting theory of the case by referring to § 2 in the citation section of the charge.[10] *See Mucciante*, 21 F.3d at 1234. Accordingly, Counts 19 through 21 were properly presented to the grand jury.

### iii. The Magistrate Court's objections to Counts 9 and 10 are contrary to law and longstanding charging conventions.

Circling back to Mr. Gogolack's charges, the Magistrate Court notes that Counts 9 and 10 "charge defendant[] Gogolack with violating 18 U.S.C. § 924(a)(8) as well as other federal statutes"—to wit, being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8) and being an unlawful user of a controlled substance in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(3) and 924(a)(8). Dkt. 643 at 6; Dkt. 24 at 37–38. Once more, the Magistrate Court claims this charging language is erroneous because "§ 924(a)(8) . . . is a sentencing provision rather than a crime," and thus "cannot have been violated." Dkt. 643 at 6.

This reasoning falters for the same reason it did for Count 4. Citations to penalty provisions promote due process values by informing the defendant of the potential penalties that attach to his charge. And unless they increase the mandatory minimum or statutory maximum term of imprisonment, a penalty provision's specific language need not be reflected in the indictment. That the indictment followed the standard convention of incorporating penalty statutes into the charging citation is not the stuff of error. *See United States v. Benedict*,

---

[10]    That the government would pursue such a theory surely came as no surprise to Mr. Hinkle given that he shared his marijuana-and-gun-filled residence with his common-law wife.

No. 24-2341, 2025 WL 1466286, at *1 (2d Cir. May 22, 2025) ("Defendant Jason Benedict pleaded guilty to possessing a firearm knowing that he had been convicted of a felony, *in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).*" (emphasis added)); *United States v. Simonson*, No. 24-2051, 2025 WL 2846435, at *1 (8th Cir. Oct. 8, 2025) ("Owen Zachary Simonson pled guilty to being a felon in possession of a firearm *in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).*" (emphasis added)); *United States v. Meigs*, No. 24-7006, 2024 WL 4554355, at *1 (10th Cir. Oct. 23, 2024) ("Tyler Aaron Meigs pled guilty to one count of possessing methamphetamine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of felon in possession of a firearm, *in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).*" (emphasis added)).    Accordingly, the Court should reject this challenge to the indictment's facial validity and, by extension, the propriety of reading the charges to the grand jury.

### iv. The Magistrate Court's objections to Counts 10, 24, and 25 are contrary to law and the rules governing the English language.

The Magistrate Court's next complaint also targets Count 10, as well as Counts 24 and 25, which charge Messrs. Ermin and Roncone with being unlawful users of controlled substances in possession of firearms in violation of 18 U.S.C. § 922(g)(3).  *See* Dkt. 24 at 46–47.  According to the Magistrate Court, these counts are facially defective for two reasons. First, they fail because they charge that each defendant, "knowing he *was* an unlawful user of controlled substances as defined in Title 21, United States Code, Section 802, did knowingly possess . . . a firearm."  Dkt. 643 at 6–7 (emphasis original).  The Magistrate Court's takes issue with this charging language because "the word 'was' is not found in § 922(g)(3)," *id.* at 7, which prohibits the possession of a firearm by "any person . . . who *is* an unlawful user of . . . any controlled substance," 18 U.S.C. § 922(g)(3).  In the Magistrate Court's view,

35

> Counts 10, 24, and 25's use of the word 'was' . . . did not convey to the grand jury § 922(g)(3)'s requirement that the use of controlled substances had to be contemporaneous with [the] possession of the firearm and ammunition.  For example, if the defendant 'was' a user of controlled substances *before* he possessed the firearm or ammunition, rather than at the time of possession, then § 922(g)(3) would not be violated.

*Id.* at 7.

Second, as the Magistrate Court observes, Counts 10, 24, and 25 "fail to identify the 'controlled substances as defined in Title 21, United States Code, Section 802' which the defendants allegedly used", and "do not [ ] cite the text or describe them in terms of § 802." *Id.*

The Magistrate Court misapprehends the meaning of the charging language in Counts 10, 24, and 25.  In each count, the indictment specifies that date range in which the defendant was an unlawful user of a controlled substance and possessed firearms, as pictured below:

<u>**COUNT 10**</u>

**(Unlawful User of Controlled Substances in Possession of a Firearm and Ammunition)**

**The Grand Jury Further Charges That:**

Between on or about July 21, 2023, and on or about August 8, 2023, the exact dates being unknown to the Grand Jury, in the Western District of New York, the defendant, **SIMON GOGOLACK**, knowing that he was an unlawful user of controlled substances as defined in Title 21, United States Code, Section 802, did knowingly possess in and affecting commerce, a firearm, namely, one KEL-TEC CNC Inc., Model KSG, 12-gauge pump action shotgun bearing serial number XXFD48, and ammunition, including, seven (7) 12-gauge rounds of ammunition labeled "AGUILA 12" on the headstamp; fourteen (14) 9mm LUGER caliber rounds of ammunition labeled "G.F.L 9mm LUGER" on the headstamp; eight (8) 9mm caliber rounds of ammunition labeled "FC 9mm LUGER" on the headstamp; and one (1) 40 S&W caliber round of ammunition labeled "R-P 40 S&W" on the headstamp.

**All in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(8).**

COUNT 24

(Unlawful User of Controlled Substance in Possession of Firearms)

The Grand Jury Further Charges That:

On December 7, 2023, in the Western District of New York, the defendant, JOHN THOMAS ERMIN a/k/a Tommy O, knowing that he was an unlawful user of controlled substances as defined in Title 21, United States Code, Section 802, did knowingly possess in and affecting commerce, firearms, namely, a (i) Ruger, Model 10/22, .22LR caliber semi-automatic rifle, bearing serial number 247-30699; and (ii) Savage, model Mark II, .22LR caliber bolt action rifle, bearing serial number 1529814; (iii) Marlin Firearms Corporation, model 1936, .30-.30 caliber lever action rifle, bearing serial number 1145; (iv) Winchester, model 1200 Defender, 12-gauge pump action shotgun, bearing serial number L1404443; and (v) Winchester, model 1200 Defender, 12-gauge pump action shotgun, bearing serial number L1301970.

All in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(8).

COUNT 25

(Unlawful User of Controlled Substance in Possession of Firearms)

The Grand Jury Further Charges That:

On December 7, 2023, in the Western District of New York, the defendant, MICHAEL RONCONE a/k/a Cone, knowing that he was an unlawful user of controlled substances as defined in Title 21, United States Code, Section 802, did knowingly possess in and affecting commerce, firearms, namely: (i) Springfield Armory by HS Produkt, model Hellcat, 9 X 19 caliber semi-automatic pistol, bearing serial number BY524165; (ii)

37

Springfield Armory, model Range Officer Elite, .45 caliber semi-automatic pistol, bearing serial number LW168920; and (iii) Chinese type 56 SKS Carbine, 7.62 X 39mm caliber semi-automatic rifle, bearing serial 1803870.

**All in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(8).**

Dkt. 24 at 38, 46–47 (highlights added).

Thus, the indictment alleges that on the dates specified in each count—that is, between July 21, 2023, and August 8, 2023 (Count 10), and December 7, 2023 (Counts 24 and 25)—the defendants were unlawful users of controlled substances and possessed firearms. *See United States v. Mack*, 343 F.3d 929, 933 (8th Cir. 2003) (explaining that the government must "demonstrate that [the defendant] *was* a 'user of any controlled substance' during the period of time he possessed the firearms" (emphasis added and quoting 18 U.S.C. § 922(g)(3))). The indictment used the word "was", as opposed to the statute's use of the word "is", because it was referring to conduct that occurred during or on those past, specified dates. In that regard, the indictment's use of the word "was" is "nothing more than a reconciliation of a statute worded in the present tense and the fact that a charging document must be worded in the past tense," because charges always relate to past conduct. *United States v. Kettles*, No. 3:16-00163-1, 2017 WL 3425162, at *2 (M.D. Tenn. Aug. 9, 2017), *aff'd*, 970 F.3d 637 (6th Cir. 2020). Indeed, the word "was" is the *past tense* first-and-third-person singular of the word "be", whereas "is" is the *present tense* third-person singular of the word "be". *See Is*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/is, (last accessed Nov. 20, 2025); *Was*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/was, (last accessed Nov. 20, 2025). So, "was" is the grammatically

38

correct word to use when referring to past conduct. The government did not commit misconduct for drafting the Indictment in accordance with the rules of the English language.

Likewise, the government did not, as the Magistrate Court implies, err in failing to specify the controlled substances that each defendant used or describe the terms of 21 U.S.C. § 802.[11] Section 922(g)(3) makes it "unlawful" for any person who is

> an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)) . . . to . . . possess . . . any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(3). The government properly alleged an element of the offense—*viz.*, that the defendants were users of controlled substances as defined in 21 U.S.C. § 802. The government was neither required to specify the controlled substances used or paste a portion of § 802(6) into the charge.[12] Accordingly, the government properly instructed the grand jury as to the § 922(g)(3) charges when it read aloud Counts 10, 24, and 25.

### v. The Magistrate Court's objections to Counts 5, 23, and 26 are contrary to law.

Lastly, the Magistrate Court contends that the government ███████████████

████████████████████████████████████████████████████████

███████████████████████        *Id.* at 7–8. This argument fails, however, because it assumes that the government was legally obliged to provide caselaw definitions to inform the grand jury's probable cause assessment. As previously noted, the law does not require the

---

[11]    Section 802(6) provides that "[t]he term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986."

[12]    Ironically, the Magistrate Court denied the defendants' motions for bills of particular, which arguably could have provided the specificity that it now thinks is necessary.

kind of instructions petit juries are accustomed to receiving.  For that reason, ███████████ ██████████████████████████████████████████████ *See Larrazolo*, 869 F.2d at 1359 (9th Cir. 1989) (explaining that, where instructions are provided, they need not lay out all elements of the charged crime as "long as the instructions given are not flagrantly misleading or so long as all the elements are at least implied").  Accordingly, the Court should conclude that each of the Magistrate Court's challenges to the Indictment fail.

Lastly, if the Magistrate Court is correct and the indictment is facially defective, the disclosure of grand jury material is unnecessary to vindicate the defendants' motions to dismiss.  Rather, the defendants could move to dismiss under Rule 12(b)(3)(B), which permits defendants to move to dismiss defective indictments.  *See* FED. R. CRIM. P. 12(b)(3)(B).

## C.    The Magistrate Court clearly erred when it ███████████████ ████████████████████████████████ ██████████

The Magistrate Court appears to have based part of its disclosure order on the proposition that the ███████████████████████████████████████ ██████████████████████.  Dkt. 643 at 5.  This finding is clearly—and flagrantly—erroneous.  At no point did the Impanelment AUSA "███████ or "██████ the grand jury that it would receive comprehensive legal instructions or definitions.  *Id.*  In fact, as the transcripts and the government's response to the Magistrate Court's Order to Show Cause made explicitly clear, the Impanelment AUSA's general introductory remarks arose under the express framing of the "██████ grand jury presentation.  Moreover, as the Impanelment AUSA's comments were not instructions on any specific case, much less this case, they could not represent the beginning of an "incomplete[]" set of instructions.  *Id.* at 5 (quoting *Smith*, 105 F. Supp. 3d at 261).  Were it otherwise, then every indictment returned

by that particular grand jury would be subject to scrutiny to see if other case-specific AUSAs "completed" ██████████████████████████████████ ████████. Accordingly, the Magistrate Court's disclosure orders rest on a clearly erroneous view of the facts.

### D. The Magistrate Court's repeated violation of the party-presentation principle confirms that it abused its discretion.

In law, process matters—and here, the Court should conclude that the process by which the Magistrate Court developed its erroneous disclosure orders bears the indelible imprint of an abuse of discretion. To recap how we got here, the "grand jury material disclosure" target has zig-zagged five times, all at the Magistrate Court's behest: first when the Magistrate Court announced during oral argument that it would inspect the materials based on an instructional issue never pressed by the parties, again when it enlarged the parameters of its review to assess the evidence underlying Overt Act ¶ 25, next in the Order to Show Cause when it returned to the question of grand jury instructions, once more when it largely abandoned its theory of instructional error advanced in the Order to Show Cause and raised another set of entirely new arguments, and finally when it *sua sponte* reversed its own decision concluding that there was no misconduct before the grand jury as to Mr. Knight. At no point has the Magistrate Court explicitly adjudicated the challenge to Overt Act ¶ 25 that Messrs. Gerace, Ermin, and Hinkle initially pressed.

The legal term for this kind of litigation whac-a-mole is arbitrary and capricious decision-making. *See Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 775–76 & n. 14 (7th Cir. 2010). And that "unfortunate phenomenon", *id.*, is the logical consequence of the Magistrate Court's abandonment of the party-presentation principle, which dictates that courts "should not[] sally forth each day looking for wrongs to right" but, instead, should adopt "the role of

*neutral* arbiter." *Sineneng-Smith*, 590 U.S. at 375 (emphasis added and cleaned up); *see also Clerk v. Sweeney*, 607 U.S. —, 2025 WL 3260170, at *1–2 (2025) (reversing a court of appeals that granted habeas relief based on a claim never presented by the petitioner).  At each turn, the Magistrate Court has abandoned those principles and embraced a practice of inventing and revising—sometimes "radical[ly]"—legal rationales in furtherance of dismissing  an  indictment in a murdered-witness case.  *Sweeney*, 2025 WL 3260170, at *2.  Coupled with the dearth of authority supporting the Magistrate Court's two disclosure orders, and its blatantly incorrect reading of the facts, the Magistrate Court's abandonment of *Sineneng-Smith*'s principles should leave this Court with the firm conviction that a mistake has been made.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that the Court (1) vacate the Magistrate Court's finding that the government misled the grand jury, as well as any other express or implied finding of prosecutorial misconduct, and (2) set aside as clearly erroneous and contrary to law the Magistrate Court's disclosure orders.

DATED:  Buffalo, New York, November 26, 2025.

Michael DiGiacomo
United States Attorney

BY:    s/ CASEY L. CHALBECK
s/ NICHOLAS T. COOPER
s/ JOSHUA A. VIOLANTI
s/ JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
Casey.Chalbeck@usdoj.gov